Reversed and Rendered and Opinion filed January 11, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00271-CV

___________________

 

Galveston Independent School District,
Appellant

 

V.

 

Brent Jaco, Appellee



 



 

On
Appeal from the 56th District Court

Galveston County,
Texas



Trial Court Cause No. 06CV1011

 



 

 

OPINION

            Brent
Jaco sued Galveston Independent District, alleging that he was constructively
discharged from his position as the District’s Director of Athletics because he
reported to the University Interscholastic League (“UIL”) that a Ball High
School student played on the school’s football team when in violation of the
UIL’s parent-residency rule.  According to Jaco, the District’s action violated
the Whistleblower Act, under which a governmental employer waives immunity from
claims that it took adverse employment action against an employee for reporting
illegal conduct.  Because we agree with the District that the UIL’s rules are
not “law” as that term is defined in the Whistleblower Act, we reverse and
render judgment dismissing Jaco’s case without addressing the District’s
remaining issues.  

I.  Factual an d Procedural
Background[1]

            In his first
semester as the District’s Director of Athletics and Extracurricular Activities,
appellee Brent Jaco learned that a student on the Ball High School football
team was in violation of a UIL rule regarding parent residency.  Jaco discussed
the matter with the UIL and with school officials, and with the District’s
approval, he submitted a written report of the violation to the UIL on November
9, 2005.  As a result of the violation, the UIL ruled that Ball High School
forfeited the games in which the ineligible player participated, and the school
was disqualified from competing for the state championship.  A few weeks after
Jaco’s report, the District superintendant reassigned him to the position of
athletic trainer.  Jaco instituted grievance proceedings before the District
school board, which reinstated him as Director of Extracurricular Activities but
did not restore him to his former position as Director of Athletics.  

            Jaco sued the
District in April 2006 and alleged that when the school board refused to
reinstate him, he was constructively discharged in violation of the Texas
Whistleblower Act.  See Tex. Gov’t
Code Ann. §§ 551.001–.010 (West 2004 & Supp. 2009).  The District moved
for summary judgment, which the trial court denied.  The District appealed the
ruling, but because the summary-judgment motion did not challenge the trial
court’s subject-matter jurisdiction, we dismissed the appeal for lack of interlocutory
appellate jurisdiction.  Galveston Indep. Sch. Dist. v. Jaco, No.
14-07-00313-CV, 2007 WL 5473075 (Tex. App.—Houston [14th Dist.] Nov. 15, 2007,
no pet.) (mem. op.) (“Jaco I”).  The District then filed a plea to the
jurisdiction in which it asserted that (a) the District’s actions do not
constitute an adverse employment act, (b) the UIL rule is not a law, and
(c) the UIL is not an “an appropriate law enforcement authority” as that
term is used in section 554.002(a) of the Texas Government Code.  See Tex. Gov’t Code Ann. § 554.002.  The
trial court denied the plea, and the District brought this interlocutory
appeal.  We concluded that the elements of a claim under the Whistleblower Act
are not jurisdictional, and thus, “a public employee successfully invokes the
subject-matter jurisdiction of the trial court by alleging a violation and
seeking relief allowed by the Whistleblower Act.”  Galveston Indep. Sch.
Dist. v. Jaco, 278 S.W.3d 477, 481 (Tex. App.—Houston [14th Dist.] 2009) (“Jaco
II”).  While the District’s petition for review of our decision was
pending, the Texas Supreme Court decided State v. Lueck, in which it
held that the elements of such a claim are jurisdictional.  290 S.W.3d 876, 883
(Tex. 2009).  The court accordingly reversed and remanded this case for us “to
determine whether, under the analysis set forth in Lueck, Jaco has
alleged a violation under the Whistleblower Act.”  Galveston Indep. Sch.
Dist. v. Jaco, 303 S.W.3d 699, 700 (Tex. 2010) (per curiam) (“Jaco III”). 
  

II.  Analysis

            Under the Act,
“[a] state or local governmental entity may not suspend or terminate the
employment of, or take other adverse personnel action against, a public
employee who in good faith reports a violation of law by the employing
governmental entity or another public employee to an appropriate law
enforcement authority.”  Tex. Gov’t Code
Ann. § 554.002(a).  In this way, the legislature balanced the
public’s interest in encouraging governmental employees to report illegal
activity against the public employer’s right to discipline employees who make
intentionally false or objectively unreasonable reports.  See Wichita
County, Tex. v. Hart, 917 S.W.2d 779, 784 (Tex. 1996).  The District
contends the trial court erred in denying its plea to the jurisdiction because Jaco
did not allege that he reported a violation of law by the District or by
another public employee to an appropriate law enforcement authority.  We agree
that the UIL’s rules are not laws, and because this issue is dispositive, we do
not reach the District’s remaining issues.   

            As defined
in the Whistleblower Act, a “law” is a state or federal statute, a local
ordinance, or “a rule adopted under a statute or ordinance.”  Tex. Gov’t Code Ann. § 554.001(1). 
Jaco does not contend that a UIL rule is a state or federal statute or a local
ordinance; rather, the parties dispute whether the UIL parent-residency rule is
a “rule adopted under a statute or ordinance.”  See id.
§ 554.001(1)(C).  The legislature has enacted some statutes under which
the UIL unambiguously is required to “adopt” particular rules.  See, e.g.,
Tex. Educ. Code
§ 33.091(b) (West 2006 & Supp. 2009) (requiring the UIL to “adopt
rules” prohibiting a student from participating in league competitions unless
the student agrees not to use steroids); id. § 33.091(d) (“The league
shall adopt rules for the annual administration of a steroid testing program .
. . .”).  But the parties have not cited, and we have not found, any statute in
which the legislature required the UIL to adopt a parent-residency rule.  Thus,
on the face of his pleadings, Jaco has not alleged facts constituting a waiver
of the District’s immunity.

            It is Jaco’s
position, however, that all of the UIL’s rules are laws because “a rule
adopted pursuant to statute” should be understood to mean “a rule sanctioned by
a legislative governmental body.”  According to Jaco, 

The legislature intended that the UIL operates pursuant to
rules; that it, as a legislative body has authority to govern the rule drafting
process and adoption of those rules, and that it has delegated authority to the
Interscholastic League Advisory Council to advise the governor, the
legislature, the UIL and the Board of Education as to the content of the rules,
with final adoption authority delegated to the Commissioner of Education.

(footnote omitted).  For
several reasons, we do not find this argument persuasive.  

            First, we
are bound to construe a statutory term to mean what the legislature defined it
to mean.  Tex. Lottery Comm’n v. First State Bank of DeQueen, 54 Tex.
Sup. Ct. J. 17, 22 (Tex. Oct. 1, 2010)  The legislature chose to define the
term “law” in pertinent part as a “rule adopted under a statute or ordinance,” and
the definition suggested by Jaco is far broader than that supplied by the
legislature.  

            Moreover,
the UIL’s rules are not “adopted” by a legislative body or even by the
commissioner of education.  Rather, the UIL is required to submit its rules and
procedures to the commissioner of education “for approval or disapproval.”  Tex. Educ. Code Ann. § 33.083(b); id.
§ 7.055(b)(41) (“The commissioner [of education] shall adopt rules
relating to extracurricular activities under Section 33.081 and approve or
disapprove University Interscholastic League rules and procedures under Section
33.083.”).[2] 
Although the words approve and adopt can be used synonymously in
some circumstances,[3]
“‘when the legislature uses certain language in one part of the statute and
different language in another, the court assumes different meanings were
intended.’”  Sosa v. Alvarez-Machain, 542 U.S. 692, 712 n.9, 124 S. Ct.
2739, 2754 n.9 (2004) (quoting 2A N. Singer, Statutes and Statutory
Construction § 46:06, p. 194 (6th rev. ed. 2000)); DeWitt v. Harris County,
904 S.W.2d 650, 653 (Tex. 1995).  In section 7.055(b)(41) of the Education Code,
the legislature distinguished between rules “adopted under a statute”—specifically,
section 33.081—and rules that are only “approved.”  Where, as here, the two
different terms are used not only in the same context but in the same sentence,
we do not agree that the legislature intended them to have identical meanings. 


            Equally
importantly, Jaco’s position cannot be reconciled with the Texas Supreme
Court’s decision in State v. Lueck.  In Lueck, a
governmental employee reported to a superior in his agency that if a contract
was not honored, then the Texas Department of Transportation would never be
able to comply with a particular federal regulation.[4]  Id. at
879.  The court held that the report did not concern a violation of law and was
not made to an appropriate law enforcement authority, but more importantly to
this case, the court stated that “[s]uch a regulatory non-compliance of this
kind does not equate to a violation of law under which a law enforcement
authority regulates or enforces within the meaning of the Whistleblower Act.”  Id.
at 885 (citing Tex. Gov’t.Code
§ 554.002(b)).  Although a federal regulation would seem to fall within
Jaco’s definition of “law,” the
Texas Supreme Court did not consider the federal regulation at issue in Lueck
to be a “law” for the purposes of the Whistleblower Act.  Applying the
analysis in Lueck to Jaco’s allegations as we have been directed to do,
we must conclude that the UIL’s rules are not “laws” under the Act.  

            Finally, treating
all of the UIL’s rules as “law” would produce absurd results.  For example, if a
public school employee who scheduled a UIL track-and-field competition placed
the shot-put competition as the boys’ first field event and the pole-vault
competition as the girls’ first field event—rather than vice versa as required
by current UIL rules—the employee would have committed an illegal act.[5]  We cannot agree
that the legislature intended the phrase “violation of law” to be read so
expansively.  We therefore sustain the District’s fourth issue.  

III.  Conclusion

            We conclude
that the trial court erred in construing the alleged violation of one of the
UIL’s rules as an allegation of a “violation of law” for the purposes of the
Whistleblower Act, and we reverse the trial court’s denial of the District’s
plea to the jurisdiction without addressing the District’s remaining issues. 
Because Jaco’s pleadings cannot be cured by amendment, no purpose can be served
by remanding the case.  Tex. A & M Univ. Sys. v. Koseoglu, 233
S.W.3d 835, 840 (Tex. 2007).  We accordingly dismiss Jaco’s case with prejudice. 


 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

 

 

Panel consists of Chief
Justice Hedges and Justices Brown and Christopher.

 









[1] We summarize the factual
background in accordance with the standard of review by reading Jaco’s
pleadings liberally and considering his intent.  See Tex. Dep’t of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).





[2] Section 33.081 includes
the “no-pass, no-play” provision, under which a student who is failing an
academic class is suspended from participation in extracurricular activities.





[3] See Roget’s II: The New Thesaurus 18, 47
(Houghton Mifflin Co. ed., 3d ed. 1995).  





[4] See 23 C.F.R.
§ 500.203.  





[5] Compare University
Interscholastic League Constitution and Contest Rules
§ 1320(e)(1)(B)(i) (2010–2011) (in girls’ field events, the shot put is
the first event and the pole vault is the sixth event) with § 1320(e)(1)(C)(i)
(in boys’ field events, the pole vault is the first event and the shot put is
the third event).