**TEXAS LOTTERY COMMISSION,**
Petitioner,

v.

**FIRST STATE BANK OF DEQUEEN,**
**Stone Street Capital, Inc., and Cletius**
**L. Irvan, Respondents.**

No. 08–0523.

Supreme Court of Texas.

Argued Dec. 16, 2009.

Decided Oct. 1, 2010.

Rehearing Denied Dec. 17, 2010.

Gregory W. Abbott, Attorney General of Texas, Kent C. Sullivan, Austin, David S. Morales, Deputy First Assistant Attorney General, Office of the Attorney General of Texas, James C. Ho, Solicitor General of Texas, Brantley David Starr, King & Spalding LLP, Ann Hartley, Office of the Attorney General of Texas, Don Wayne Cruse Jr., Law Office of Don Cruse, Austin, Michael P. Murphy, Asst. Solicitor General, Clarence Andrew Weber, First Assistant Attorney General, Alicia Key, Deputy Atty. Gen. for Petitioner.

Jeffrey S. Boyd, Schuyler Bailey Marshall V, Thompson & Knight LLP, Austin, for First State Bank of DeQueen.

Max Ralph Tarbox, Andrew Raymond Seger, Todd Jeffrey Johnston, McWhorter Cobb & Johnson LLP, Lubbock, for Cletius L. Irvan.

Justice JOHNSON delivered the opinion of the Court.

This case arises because provisions of the Texas Uniform Commercial Code (UCC) and the Texas Lottery Act conflict as to whether installment payments of a lottery prize are assignable. The primary issues are whether the Commission has sovereign immunity from suit and whether the Lottery Act's prohibition against transferring the last two installments of a prize are negated by the UCC.

Cletius Irvan, a Texas Lottery prizewinner, assigned his final two annual installment prize payments as part of a financial arrangement by which he was to pay a bank debt. The Lottery Commission re-fused to recognize the assignment because the Lottery Act prohibits assignments of installment payments due within the final two years of the prize payment schedule. Irvan and other parties to the assignment sought a declaratory judgment that the UCC permits such assignments and specifically renders conflicting provisions of the Lottery Act ineffective. The trial court and court of appeals held that the UCC prevailed and the assignments were permitted. We agree and affirm the court of appeals' judgment.

## I. Background

### A. The Statutory Conflict

When the Lottery Act was first enacted, lottery prizes generally could not be assigned, and to the extent they could be assigned, the assignment had to be pursuant to an "appropriate judicial order" that resolved a controversy involving the prize winner. *See* Act of Aug. 12, 1991, 72nd Leg., 1st C.S., ch. 6, § 2, 1991 Tex. Gen. Laws 197, 218 (current version at TEX. GOV'T CODE § 466.406). In 1999, the Act was amended and restrictions on assignment of prizes were relaxed. Act of May 30, 1999, 76th Leg., R.S., ch. 1394, §§ 2, 4, 1999 Tex. Gen. Laws 4717, 4717–18. The amended provisions authorized prize winners to assign all but the last two installment prize payments if certain requirements were met.[1] TEX. GOV'T CODE § 466.410(a). Under the amended Act, however, "prize payments due within the

---

1. The requirements are not relevant to disposition of this appeal, but they include: (1) approval of the assignments by a district court in Travis County, (2) service of the petition seeking approval on the executive director of the Lottery Commission, (3) the assignment being in writing, and (4) the assignor providing an affidavit stating that he is of sound mind, is over 18 years of age, has been advised regarding the assignment by independent legal counsel, has had the opportunity to receive independent financial advice, and has been provided a disclosure stating the payments being assigned, the purchase price being paid, the rate of discount to the present value of the prize, and the amount of closing fees. TEX. GOV'T CODE § 466.410(b).

final two years of the prize payment schedule may not be assigned." *Id.*

The apparent statutory conflict in this case arises because thirteen days before amending the Lottery Act in 1999 the Legislature amended the UCC and included "winnings in a lottery or other game of chance operated or sponsored by a state" as part of the definition of "account." Act of May 17, 1999, 76th Leg., R.S., ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639, 2640 (codified at TEX. BUS. & COM. CODE § 9.102(a)(2)(viii)). Under the UCC, accounts are assignable. *See* TEX. BUS. & COM.CODE § 9.406(a). The UCC amendments, however, did not parallel the Lottery Act amendments that prohibited assignment of the last two installment payments of a lottery prize. To the contrary, the UCC reinforced the assignable character of accounts by specifying that rules of law, statutes and regulations purporting to prohibit or restrict assignment of accounts are ineffective:

> [A] rule of law, statute, or regulation that prohibits, restricts, or requires the consent of a government, governmental body or official, or account debtor to the assignment or transfer of, or creation of a security interest in, an account or chattel paper is ineffective to the extent that the rule of law, statute, or regulation:
>
> > (1) prohibits, restricts, or requires the consent of the government, governmental body or official, or account debtor to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account or chattel paper....

*Id.* § 9.406(f). The amendments to the UCC were effective in 2001. In 2001, section 9.406(f) was amended in part and reenacted; the provisions making conflicting statutes ineffective were not changed by the amendment. *See* Act of May 17, 2001, 77th Leg., R.S. ch. 705, § 11, 2001 Tex. Gen. Laws 1403, 1405 (codified at TEX. BUS. & COM. CODE § 9.406(f)).

## B. Facts

Cletius Irvan won a Texas Lottery prize in 1995. The prize was payable in twenty annual installments of just over $440,000 each, with the final two payments to be made in 2013 and 2014. After the Legislature amended the Act so prize payments could be assigned, Irvan assigned his rights to all but the last two of his prize payments in exchange for a lump sum.[2] He later became indebted to First State Bank of DeQueen (FSB DeQueen). Arrangements were made in 2006 for Irvan to pay the debt through a common-law Composition of Creditors proceeding in Arkansas. The creditors' arrangement provided for Irvan to assign the rights to his final two annual lottery payments to Stone Street Capital, which would in turn assign the rights to Great–West Life and Annuity. In consideration for assigning his rights, Irvan was to receive a lump sum of $308,032, out of which he would pay FSB DeQueen. The arrangement was approved by an Arkansas court. FSB DeQueen notified the Lottery Commission of the assignment and filed an application in Travis County to register the Arkansas judgment approving the arrangement. *See* TEX. CIV. PRAC. & REM.CODE § 35.003. The Commission advised FSB DeQueen and Irvan that it did not recognize the validity of the Arkansas judgment and it intended to make the final prize payments to Irvan.

---

2. Irvan made two assignments to the same company. The record is not clear whether he received one or two lump sum payments.

FSB DeQueen, Irvan, and Stone Street Capital (collectively, FSB) filed suit pursuant to the Declaratory Judgments Act (DJA) seeking declaratory and injunctive relief. *See id.* §§ 37.001–.011. Specifically, FSB sought declaratory judgment that (1) the final Arkansas order is effective as a Travis County judgment, (2) Section 9.406(c) of the UCC renders Lottery Act sections 466.406 and 466.410 ineffective, (3) the assignments of the final prize payments from Irvan to Stone Street and from Stone Street to Great–West are enforceable, and alternatively, (4) the Arkansas Final Order is an "appropriate judicial order pursuant to which the Commission shall make the final prize payments to Great–West." *See* Tex. Gov't Code § 466.406(f) ("A prize to which a winner is otherwise entitled may be paid to any person under an appropriate judicial order."). FSB also requested the court to enjoin the Commission and to require it to make the final lottery payments to Great–West.

FSB moved for partial summary judgment on its claim that the UCC renders the anti-assignment provisions of the Lottery Act ineffective. The trial court granted the motion and declared that UCC sections 9.406 and 9.102 render Lottery Act sections 466.406 and 466.410 ineffective to the extent those sections purport to restrict or prohibit assignment of prize payments. At the parties' request, the trial court severed the UCC claim and the Commission appealed the summary judgment. The court of appeals affirmed. 254 S.W.3d 677.

In this Court, the Commission seeks reversal of the court of appeals judgment on the bases that: (1) the Commission has sovereign immunity from suit, thus the

appeal and suit should be dismissed for lack of jurisdiction; (2) under the UCC, conflicts should be resolved in favor of the Lottery Act because the act is a consumer protection law; and (3) under established canons of statutory interpretation regarding conflicting statutes, the Lottery Act controls.[3] We disagree with the Commission and affirm the judgment of the court of appeals.

## II. Jurisdiction

■ The Commission first argues that it has sovereign immunity from suit so the appeal and suit should be dismissed for lack of jurisdiction. It urges that this is an *ultra vires* suit which must be brought against a state official and it cannot be brought against the Commission because the Commission is a governmental entity. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 372–73 (Tex.2009). FSB counters that this appeal involves a challenge to the validity of a statute and the DJA waives the Commission's immunity as to such claims. We agree with FSB. As we explain below, the claim in this appeal is not one involving a government officer's action or inaction, but is a challenge to a statute. Thus this is not an *ultra vires* claim to which a government officer must be a party.

■ An *ultra vires* suit is one to require a state official to comply with statutory or constitutional provisions. *Id.* at 372. In *Heinrich* we distinguished between claims seeking declaratory relief in an *ultra vires* suit, which must be brought against governmental officials, and suits challenging the validity of an ordinance or statute. *Id.* at 373 n. 6 ("For claims challenging the validity of ordinances or statutes . . . the

---

**3.** The Commission also, in a footnote, urges that the UCC does not apply because it is inapplicable to assignments undertaken to satisfy a preexisting debt such as Irvan's debt to FSB DeQueen. The Commission does not cite authority for nor present argument to support its position. We decline to make its case for it. *See* Tex.R.App. P. 55.2(i).

Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity." (citing Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ.Cᴏᴅᴇ § 37.006(b))). While FSB filed an initial claim challenging Commission actions and requesting the Commission be required to comply with statutory provisions, that is not the claim at issue here. FSB asserted in its pleadings that the Commission did not recognize the validity of the final order filed in Travis County and refused to acknowledge and comply with it, but that the Act authorized the Commission to accept and comply with the assignments. FSB requested a declaratory judgment that the final order was an appropriate judicial order pursuant to which the Commission should make payments to Great–West. It also sought a judgment enjoining the Commission to make payments to Great–West. Those claims were severed from the question ruled on by the trial court and at issue here: whether UCC sections 9.406 and 9.102 render Texas Government Code sections 466.406 and 466.410 ineffective to the extent those sections restrict or prohibit the assignment of Texas Lottery prize payments. FSB asserts that immunity does not apply because, unlike the plaintiff in *Heinrich*, it is not challenging an individual's actions under a statute, but is challenging the validity of the statute itself. We agree.

The Declaratory Judgments Act

expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates

that governmental entities may be—indeed must be—joined in suits to construe their legislative pronouncements. *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994).[4]

■ The Commission also argues that the DJA does not waive immunity in this case because it only waives immunity of a municipality, not a state entity. The Commission points to Civil Practice and Remedies Code section 37.006(b), which states that "[i]n any proceeding that involves the validity of a municipal ordinance ... the municipality must be made a party." But the Court in *Leeper* did not rely on section 37.006 when it concluded that "governmental entities" are to be joined in suits to construe legislative pronouncements. Rather, the Court concluded that because the DJA permits statutory challenges and governmental entities may be bound by those challenges, the DJA contemplates entities must be joined in those suits. *Leeper,* 893 S.W.2d at 446. We have subsequently applied the holding of *Leeper* to different governmental entities. *Heinrich,* 284 S.W.3d at 373 n. 6; *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697–98 (Tex.2003); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 859–60 (Tex.2002). Accordingly, we disagree that the DJA only waives the immunity of municipalities.

Next, the Commission asserts that the DJA does not waive immunity because it applies only to suits involving constitutional invalidation and not to those involving statutory interpretation. But the language in the DJA does not make that distinction. In *Leeper,* the issue was whether a mandatory school attendance private school exemption statute applied to

---

4. *See also Heinrich,* 284 S.W.3d at 373 n. 6 (citing Texas Civil Practice and Remedies Code section 37.006(b) and noting that when the *validity* of ordinances or statutes is challenged, the DJA waives immunity to the extent it requires relevant governmental entities be made parties).

children taught at home. *Leeper,* 893 S.W.2d at 433. While the plaintiffs also claimed that enforcement of the statute violated their constitutional rights, the Court did not reach the constitutional issue. *Id.* at 446. Rather, the DJA discussion was in the context of a statutory clarification. *Id.*

Because the claim at issue here is not one involving a government officer's action or inaction, but is a challenge to a statute, this is not an *ultra vires* claim to which a government officer should have been made a party. The decision on this claim may ultimately impact actions taken by officers of the Commission, but that does not deprive the trial court of jurisdiction. *Id.* at 445 (noting that the DJA allows courts to declare relief "whether or not further relief is or could be claimed"). The trial court properly exercised jurisdiction over this claim.

We next turn to the question of whether the UCC impacts the Lottery Act's anti-assignment provisions, and if so, how.

### III. Construing the Statutes

We review issues of statutory construction de novo. *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003). In construing statutes our primary objective is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha,* 290 S.W.3d 863, 867 (Tex.2009). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *See City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008). We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *See In re Caballero,* 272 S.W.3d 595, 599 (Tex.2008);

*Chastain v. Koonce,* 700 S.W.2d 579, 582 (Tex.1985).

### A. Does the Lottery Act Provide a Different Rule for Consumers?

The UCC authorizes state lottery winners to freely assign their winnings. TEX. BUS. & COM.CODE § 9.406(a) (permitting account assignments); *see id.* § 9.102(a)(2)(viii) (including "winnings in a lottery or other game of chance operated or sponsored by a state" in the definition of "Account"). Citing section 9.201 of the UCC, the Commission asserts that Chapter 9 of the UCC conflicts with the Lottery Act and the Lottery Act controls.

Section 9.201 of the UCC provides, in relevant part:

(b) A transaction subject to this chapter is subject to any applicable rule of law that establishes a different rule for consumers. . . .

(c) In case of a conflict between this chapter and a rule of law, statute, or regulation described in Subsection (b), the rule of law, statute, or regulation controls.

*Id.* § 9.201. The Commission asserts sections 9.201(b) and (c) make it clear that any conflict between Article 9 and consumer protection laws must be resolved against Article 9 and that the Lottery Act and its anti-assignment provisions are unquestionably consumer protection provisions. FSB counters that (1) the Lottery Act provision does not "establish a different rule of law for consumers" because neither the Lottery Act nor the UCC refers to lottery prize winners or assignors as "consumers," (2) the Lottery Act's anti-assignment provisions protect lottery *winners* who are not consumers, but rather who are account creditors who sell their rights, and (3) a lottery winner such as Irvan who sells his right to receive payments is not purchasing or acquiring any-

thing, thus he cannot be a consumer as to the transaction. We agree with FSB that the Lottery Act does not provide a different rule for consumers within the meaning of section 9.201 of the UCC.

Chapter 9 of the UCC does not provide a definition for "consumer," but the term is defined in Chapter 1 as "an individual who enters into a transaction primarily for personal, family, or household purposes." *Id.* § 1.201(b)(11). The Chapter 1 definitions apply to all chapters of the UCC except when the context in which they are used requires otherwise or a different definition is provided by a particular chapter. *Id.* § 1.201(a). Neither of the exceptions applies here, thus the definition in section 1.201(b)(11) applies.

■ While the Lottery Act establishes a rule regarding lottery prize assignments different from the provisions in the UCC, the Lottery Act's rule is not specifically directed at or limited to individuals who enter into a transaction primarily for personal, family, or household purposes. Any purchaser of a lottery ticket, whether an individual or some type of entity such as a partnership, trust, or corporation, purchases the ticket subject to the provisions of the Lottery Act. TEX. GOV'T CODE § 466.252 ("By purchasing a ticket in a particular lottery game, a player agrees to abide by and be bound by the commission's rules, including the rules applicable to the particular lottery game involved."). The Lottery Act provides that "[a] person may assign, in whole or in part, the right to receive prize payments that are paid by the commission" and then sets out what is required of the assignor. *Id.* § 466.410. The Legislature has defined the term "person" to include "[a] corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." *Id.* § 311.005(2).

Nothing in section 466.410 indicates the assignment provisions are applicable only when an individual purchases a ticket, much less only when an individual purchases a ticket for purposes of personal, family, or household use. *See* TEX. BUS. & COM.CODE § 1.201(b)(11). Nor does the Lottery Act limit the applicability of the assignment provisions and restrictions to individuals such as Irvan, even if they are entering the assignment transaction to receive and use money for personal, family, or household purposes. To the contrary, the Lottery Act contemplates that a prizewinner, and therefore a person entitled to receive and assign—or restricted from assigning—prize payments, may be "persons" who are not individuals or consumers. *See* TEX. GOV'T CODE § 466.406(b). Furthermore, the Lottery Act refers to "individuals" in several sections. *See, e.g., id.* § 466.3051 (providing that an individual younger than eighteen years of age may not purchase a lottery ticket); *id.* § 466.409 (providing that certain individuals are not eligible to receive lottery prizes). The fact that the Legislature made certain provisions of the Act applicable only to individuals indicates that its use of the word "person" rather than "individual" in section 466.410 was intentional. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 253 S.W.3d 184, 193 n. 20 (Tex.2007); *see also Harris County Hosp. Dist. v. Tomball Reg'l Hosp.,* 283 S.W.3d 838, 842 (Tex.2009) (noting that we examine the Legislature's words in context of the statute as a whole and do not consider words or parts of the statute in isolation). So, while section 466.410 applies to individuals who assign or desire to assign their prize payments for personal, family, or household purposes, the use of "person" in context of section 466.410 does not require a different definition than that prescribed by the Code Construction Act. And, we do not see how use of the Legislature's defini-

tion yields an absurd result. Under the circumstances, we are bound to construe the term "person" to mean what the Legislature defined it to mean, and it is not limited to consumers as defined by the Lottery Act, the UCC, or any other applicable definition of consumer. Moreover, if section 9.201(b)'s reference to a statute or rule that establishes a different rule for consumers encompasses statutes and rules applying equally to both consumers and non-consumers, as opposed to only consumers, then all conflicting laws or rules that apply to consumers would be subject to the exception, and the exception would swallow the UCC's overarching rule that accounts are assignable.

The Commission stresses that a transaction by a consumer occurred in this case: Irvan assigned his future lottery winnings in return for an up-front lump sum payment—a transaction primarily for personal, family, or household purposes. But even assuming Irvan's assignment was a consumer *transaction*, the UCC does not address individual transactions undertaken by consumers. It addresses rules of law, statutes, and regulations that apply broadly. Section 466.410 establishes a rule for all persons, not just individuals involved in Lottery Act transactions primarily for personal, family, or household purposes. Read in context, we do not believe section 466.410 is a statute or rule of law "that establishes a different rule for consumers" within the meaning of section 9.201(b).

**B. Do Canons of Construction Apply?**

The Commission asserts that the UCC does not render the Lottery Act assignment restrictions in sections 466.406 and 466.410 ineffective based on established canons of statutory interpretation. It points to the Code Construction Act, which provides guidance for courts when they seek to determine the Legislature's intent.

Specifically, the Commission points to the following as legislative guidance that should be used here: (1) an entire enacted statute is presumed to be effective, TEX. GOV'T CODE § 311.021(2); (2) if statutes are irreconcilable, the statute latest in date of enactment prevails, *id.* § 311.025(a); and (3) a specific statutory provision prevails as an exception over a conflicting general provision. *Id.* § 311.026.

 FSB argues that even though the Legislature's guidance for construing statutes would confirm the conclusions of the trial court and court of appeals if they were applied, applying the canons is inappropriate because in the UCC the Legislature specifically provided the means for resolving conflicts between the UCC and other statutes such as the Lottery Act. We agree with FSB that because the Legislature expressly and unambiguously set out the method for resolving conflicts between the UCC and other statutes, it would be improper to go outside the language of the statute and use canons of construction to resolve the question. *City of Rockwall*, 246 S.W.3d at 626 ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language."). Courts "do not lightly presume that the Legislature may have done a useless act." *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex.1998). But we must take statutes as we find them and first and primarily seek the Legislature's intent in its language. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). Courts are not responsible for omissions in legislation, but we are responsible for a true and fair interpretation of the law as it is written. *Id.* Additionally, "[i]t is at least theoretically possible that legislators—like judges or anyone else—may make a mistake." *Brown v. De La Cruz,*

156 S.W.3d 560, 566 (Tex.2004). Even when it appears the Legislature may have made a mistake, courts are not empowered to "fix" the mistake by disregarding direct and clear statutory language that does not create an absurdity. *See id.* (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 579, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)). And although some might believe precluding lottery prize winners from assigning all or some of their installment payments is the better policy choice, we do not see how it is an absurdity to construe this clear statutory language to mean what it says. Here the result is that lottery winners are allowed to assign what no one contests is their property, even at the risk of their making poor assignment choices.

■ The UCC specifies that state lottery winnings are accounts and are assignable, TEX. BUS. & COM.CODE § 9.406(a), but the Lottery Act prohibits assignments of the last two prize installments. TEX. GOV'T CODE §§ 466.406, 466.410. While these statutory provisions conflict, the Legislature also explicitly provided that "a rule of law, statute, or regulation that prohibits [or] restricts" an assignment of a prize won in a state lottery "is ineffective." TEX. BUS. & COM.CODE § 9.406(f). Giving effect to the clear legislative language about how to resolve conflicts regarding assignments results in there being no conflict to resolve because the Lottery Act's anti-assignment provisions are ineffective insofar as they conflict with the UCC.

Moreover, the Commission's argument that we should not construe the UCC to render the Lottery Act anti-assignment provisions useless turns on itself. If we construe the Lottery Act's anti-assignment restrictions as valid because otherwise their enactment would be a useless legislative action, we render UCC section 9.406(f) useless as it applies here. Under that construction section 9.406(f) would be use-

less legislative action, at least in part, because that section clearly was enacted to address situations in which the Legislature enacted a conflicting statute.

The Commission points to cases from other jurisdictions holding that statutory restrictions on lottery assignments are effective. In three of the cases the facts and statutes are distinguishable from those at issue here. *See In re Guluzian,* No. BK 04–10390–JMD, 2004 WL 2813523, at *3 (Bankr.D.N.H. Dec. 3, 2004) (noting that legislation amending the UCC assignment provisions to include lottery payments also amended the lottery statute to provide that the lottery prize assignment prohibition prevailed over UCC provisions); *In re Duboff,* 290 B.R. 652, 656 (Bankr.C.D.Ill. 2003) (holding that UCC provision was inapplicable because it was not enacted until nineteen months after the assignment was executed); *Midland States Life Ins. Co. v. Cardillo,* 59 Mass.App.Ct. 531, 797 N.E.2d 11, 17–18 (2003) (noting that at the same time the UCC was amended, the lottery statute was amended to provide that it prevailed over UCC provisions).

In two cases factually similar to the one before us, courts held that statutory restrictions on lottery prize assignments prevailed over UCC provisions declaring such restrictions ineffective. *See Stone St. Capital, LLC v. Cal. State Lottery Comm'n,* 165 Cal.App.4th 109, 80 Cal.Rptr.3d 326, 340 (2008); *Va. State Lottery Dept. v. Settlement Funding, LLC,* No. CH–2003– 183848, 2005 WL 3476682, at *3 (Va.Cir.Ct. Nov. 7, 2005). But in both those cases, the courts relied on statutory construction aids to reach their conclusions. *Stone St. Capital,* 80 Cal.Rptr.3d at 333 (noting that under California rules of statutory construction, a more specific statute controls over a general statute, regardless of which statute was passed earlier); *Va. State Lottery Dep't,* 2005 WL 3476682, at *2–3 (applying

the rule of statutory construction that a specific statute applies over a general one). While we have no argument with how those courts resolved their statutory conflicts, neither court discussed resolving the conflict by initially and primarily looking at the language in the statutes themselves. In contrast, we construe statutes by first looking to the statutory language for the Legislature's intent, and only if we cannot discern legislative intent in the language of the statute itself do we resort to canons of construction or other aids such as which statute is more specific. *City of Rockwall,* 246 S.W.3d at 626. Under Texas rules of statutory construction, the language of UCC section 9.406 prevails because on its face it manifests clear legislative intent that conflicting statutes are ineffective.

The Commission argues that failing to give effect to the Lottery Act would essentially amount to an impermissible requirement that the Legislature use explicit language to carve out the Lottery Act from the reach of section 9.406; in other words, a requirement of a "magical password." *See Lockhart v. United States,* 546 U.S. 142, 149, 126 S.Ct. 699, 163 L.Ed.2d 557 (2005) (Scalia, J., concurring) ("When the plain import of a later statute directly conflicts with an earlier statute, the later enactment governs, *regardless* of its compliance with any earlier-enacted requirement of an express reference or other 'magical password.'"). But Justice Scalia was referring to provisions that require Congress to use specific language in order to repeal, limit, or modify a statutory provision. *See id.* Here, UCC section 9.406(f) does not require some specific language to be included in subsequent legislation in order for it to be modified or repealed. Nor does the Commission contend that the Legislature was attempting to repeal or otherwise modify section 9.406(f) when it enacted the prohibition on lottery prize assignments.

Finally, the Commission asserts that we should give serious consideration to the Commission's construction of the Lottery Act, by which it gives full effect to the assignment restrictions. *See Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993) ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute."). But here we are not construing the Lottery Act. We are construing the UCC and determining whether it renders sections 466.406 and 466.410 of the Lottery Act ineffective. The Commission does not argue that it is charged with enforcement of the UCC, and even if it were so charged, its interpretation of the UCC contradicts the plain language of that statute. *See id.*

■ In sum, the language of UCC section 9.406(f) is clear; we need not use a canon of construction to construe it other than the prime canon: we construe statutes by first looking to the statutory language for the Legislature's intent, and only if we cannot discern legislative intent in the language of the statute itself do we resort to canons of construction or other aids such as which statute is more specific. *City of Rockwall,* 246 S.W.3d at 626. Here the statute's unambiguous words disclose the legislative intent: if the Legislature should happen to have enacted, or enacts, a conflicting statute, the conflicting statute is "ineffective to the extent that the ... statute ... prohibits [or] restricts" the assignment of an account. TEX. BUS. & COM.CODE § 9.406(f). Section 9.406(f) makes sections 466.406 and 466.410 of the Lottery Act ineffective to the extent they prohibit or restrict Irvan's assignment.

## IV. Child Support

■ Finally, the Commission asserts that holding the UCC prevails over sec-

tions 466.406 and 466.410 will inhibit the State's efforts to collect child support because the Lottery Act provisions requiring the Commission to deduct the amount of a child support lien before paying a prize to a child support obligor will also be rendered ineffective. *See* Tex. Gov't Code § 466.4075. The argument is substantively similar to the argument that we should use construction aids to resolve the conflict between the statutory provisions; it effectively urges us to disregard the rule that when a statute's language is clear and unambiguous courts do not resort to rules of construction or extrinsic aids to construe the language. *See City of Rockwall,* 246 S.W.3d at 626. We agree that persons who owe child support should pay it. But when the language of a statute is clear, it is not the judicial prerogative to go behind or around that language through the guise of construing it to reach what the parties or we might believe is a better result. *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.,* 283 S.W.3d 838, 847 (Tex.2009).

## V. Conclusion

Sections 466.406 and 466.410 of the Lottery Act are ineffective to the extent they restrict or prohibit Irvan's assignment. We affirm the judgment of the court of appeals.