

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00178-CV

**WEBB CONSOLIDATED INDEPENDENT SCHOOL DISTRICT**,
Appellant

v.

Robert **MARSHALL** and Amy Marshall,
Appellees

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2020CVK001053C1
Honorable Hugo Martinez, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Beth Watkins, Justice

Delivered and Filed: December 13, 2023

AFFIRMED

Pursuant to subsection 11.1512(c-2) of the Texas Education Code, former school board members Robert Marshall and Amy Marshall (collectively, "the Marshalls")[1] filed suit against appellant Webb Consolidated Independent School District ("Webb CISD") seeking injunctive relief to access documents they believed were withheld by Webb CISD following multiple requests for the documents. Webb CISD appeals the trial court's order denying its plea to the jurisdiction,

---

[1] The record reflects Amy Marshall's final term on the school board expired in November 2020. Webb Consolidated ISD filed a request that we take judicial notice that Robert Marshall's final term on the school board expired in November 2022.

motion for traditional summary judgment, and motion for no-evidence summary judgment.[2] We affirm.

## BACKGROUND

According to their first amended petition, the Marshalls—acting in their official capacities as school board members—made several requests for information and documents from Webb CISD in 2019 and 2020. Webb CISD asserts it provided the Marshalls with all the requested information and documents maintained by the district. However, the Marshalls maintain Webb CISD has withheld documents that were requested pursuant to subsection 11.1512(c) of the Texas Education Code. *See* TEX. EDUC. CODE ANN. § 11.1512(c).

On June 12, 2020, the Marshalls filed suit in Webb County seeking injunctive relief to obtain the requested information. On August 16, 2021, Webb CISD filed a plea to the jurisdiction and no-evidence and traditional summary judgment motions. In its plea to the jurisdiction, Webb CISD asserted: (1) the Marshalls' claims regarding documents requested in 2019 are precluded from the suit because they were previously adjudicated before the Commissioner of Education in an administrative hearing, and the Marshalls did not timely appeal the decision to a Travis County district court; (2) the Marshalls cannot file suit in the courts regarding the documents requested in 2020 because the Marshalls failed to exhaust their administrative remedies prior to filing suit; and (3) Amy Marshall's claims are moot because she is no longer a member of the school board.

In its traditional summary judgment motion, Webb CISD asserted "the attached evidence conclusively establishes that [the Marshalls'] claims are meritless" because it had provided all the requested information that is maintained by the school district. Webb CISD further asserted in its

---

[2] "A person may appeal from an interlocutory order of a district court, county court at law . . . that: . . . grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [s]ection 101.001" of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8). Section 101.001 defines "governmental unit" as "a political subdivision of this state, including any . . . school district . . . ." *Id.* § 101.001(3)(B).

no-evidence summary judgment motion that "there is no evidence that [the Marshalls] have not been provided with the information, documents, or records maintained by the school district that they requested."

In their response to the plea to the jurisdiction, the Marshalls argued subsection 11.1512(c-2) allows them to file suit in the courts for appropriate injunctive relief to obtain the requested information without having to first exhaust their administrative remedies. They also argued that Amy Marshall's suit is not moot because she was a school board member "at all relevant times when the [s]tatutory [r]equests were made and when the [l]awsuit was filed." In response to the summary judgment motions, the Marshalls attached their various 2019 and 2020 documents requests and their own affidavits attesting to the documents they aver Webb CISD has withheld.

On March 22, 2022, the trial court denied Webb CISD's plea to the jurisdiction and denied its no-evidence and traditional motions for summary judgment. Webb CISD appeals.

**MOOTNESS**

We first address Webb CISD's third issue because it implicates our jurisdiction to entertain this appeal. In its third issue, Webb CISD argues the Marshalls' suit is moot because the Marshalls are no longer school board members.

In its opening brief, Webb CISD asserted Amy Marshall is no longer a school board member. The Marshalls do not dispute this assertion. In a filing on February 1, 2023, Webb CISD requests we take judicial notice that Robert Marshall is no longer a school board member as of November 15, 2022. We have the power, "on affidavit or otherwise," to "ascertain the matters of fact that are necessary to the proper exercise of [our] jurisdiction[,]" even if evidence establishing those facts is not in the appellate record. *See* TEX. GOV'T CODE ANN. § 22.220(c); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 6–7 (Tex. 2018) (holding a reviewing court may look at

election results outside the appellate record to determine whether an issue is moot due to an elected official leaving office). Here, Webb CISD's February 1, 2023 filing states the school board canvassed election results on November 15, 2022, included a link to the agenda for the November 15, 2022 board meeting, and a link to Webb CISD's website showing the current school board members. Robert Marshall is not listed as a current school board member. The Marshalls did not file a response disputing Webb CISD's assertion that Robert Marshall is no longer a school board member. Because we have the power to ascertain matters of fact necessary to the proper exercise of our jurisdiction, we take notice that Robert Marshall is no longer a school board member of Webb CISD. *See Best*, 562 S.W.3d at 7.

Webb CISD contends subsection 11.1512(c) provides only current school board members with the inherent right of access to information, documents, and records maintained by the school district. Because Robert and Amy Marshal are not current school board members, Webb CISD argues the Marshalls' suit for injunctive relief to obtain this information is moot.

"A case becomes moot when there ceases to be a justiciable controversy between the parties or when the parties cease to have 'a legally cognizable interest in the outcome.'" *Best*, 562 S.W.3d at 6 (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). "Mootness occurs when events make it impossible for the court to grant the relief requested or otherwise affect the parties' rights or interests." *Best*, 562 S.W.3d at 6 (internal quotation marks omitted). "When a case becomes moot, the court loses jurisdiction and cannot hear the case, because any decision would constitute an advisory opinion that is 'outside the jurisdiction conferred by [article II, section 1 of] the Texas Constitution . . . .'" *Id.* (quoting *Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016)). But "[a] case is not rendered moot simply because some of the issues become moot during the appellate process." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005)

(orig. proceeding). "If only some claims or issues become moot, the case remains 'live,' at least as to other claims or issues that are not moot." *Best*, 562 S.W.3d at 6.

We agree that any outstanding requests for information under subsection 11.1512(c) and pending request for injunctive relief under subsection 11.1512(c-2) have been rendered moot by the expiration of the Marshalls' respective terms as school board members because they no longer have an inherent right of access to the information, and the school district is no longer required to produce the outstanding information, if any. However, the Marshalls' request for attorney's fees and court costs in its live pleadings presents an issue that is separate from the request for information.

The Texas Supreme Court recently recognized, in some cases, "a claim for attorney's fees 'breathes life' into a suit that has become moot in all other respects." *Best*, 562 S.W.3d at 7. "Whether an attorney's-fees claim breathes life into an otherwise moot appeal depends first on whether the claimant seeks the fees under a statute that authorizes fees only for a prevailing party or, alternatively, under a statute that permits fees based on equitable principles regardless of who prevails." *Id.*

When the party seeks attorney's fees under a prevailing-party statute, the determination of whether the attorney's-fees claim is moot depends on whether the movant prevailed before the underlying substantive claim became moot. *O'Hern v. Mughrabi*, 579 S.W.3d 594, 600 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Best*, 562 S.W.3d at 7.). "[I]f the party prevailed before the substantive claim became moot, the party's claim for attorney's fees under a prevailing-party statute remains a live controversy and a court must consider the claim's merits to determine whether the party properly prevailed." *Best*, 562 S.W.3d at 7; *see also Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (concluding when the claimants prevailed in the trial court before their underlying claims became moot, their claim for attorney's fees as prevailing

parties remained live even though the underlying claims were moot). "[I]f the party did not prevail before the substantive claim became moot, the party's claim for attorney's fees is also moot because the party can never prevail and thus can never be entitled to attorney's fees." *Best*, 562 S.W.3d at 7–8; *see also Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229–30 (Tex. 1993) (holding an attorney's-fees claim under a prevailing-party statute had become moot along with the underlying claim because the claimant had not prevailed before mootness occurred).

Subsection 11.1512(c-2) of the Texas Education Code entitles a prevailing school board member to recover court costs and reasonable attorney's fees. *See* TEX. EDUC. CODE ANN. § 11.1512(c-2) ("A [school board] member who prevails in a suit under this subsection is entitled to recover court costs and reasonable attorney's fees."). Thus, the determination of whether the claim for court costs and attorney's fees "breathes life" into this otherwise moot case depends on whether the Marshalls prevailed before their substantive claims for injunctive relief became moot.

Here, the trial court granted the Marshalls' request for injunctive relief under subsection 11.1512(c-2)—for at least some of the information requested—on September 15, 2020. Robert and Amy Marshall attached affidavits to their response to Webb CISD's plea to the jurisdiction and motions for summary judgment. Robert's affidavit, signed November 23, 2021, states that Robert was a current board member of Webb CISD as of that date. Amy's affidavit states that Amy was a school board member serving Webb CISD "from November 2008 through November 2020." Because the Marshalls prevailed on their claim for injunctive relief—at least for the information in the trial court's temporary injunction order—before either of the Marshalls' departure from the school board rendered their pending claims for information moot, we conclude the Marshalls' claims for attorney's fees and court costs breathe life into this appeal. *See Best*, 562 S.W.3d at 8.

Accordingly, we overrule Webb CISD's third issue.

### PLEA TO THE JURISDICTION: ADMINISTRATIVE REMEDIES

Initially, Webb CISD argues the trial court did not have jurisdiction over the Marshalls' suit because they failed to first exhaust their administrative remedies before seeking judicial review. In its first issue, Webb CISD argues the Marshalls were required to seek administrative relief from the Commissioner of Education before they could file suit regarding the 2020 requests for information. In its second issue, Webb CISD argues the Marshalls properly sought administrative relief from the Commissioner of Education regarding the 2019 requests for information, but the Marshalls failed to appeal to a Travis County district court the Commissioner's decision denying relief. *See* TEX. EDUC. CODE ANN. § 7.057(d) ("A person aggrieved by an action of the agency or decision of the commissioner may appeal to a district court in Travis County."). Because Webb CISD's first two issues hinge on whether a party must exhaust administrative remedies before filing suit for injunctive relief under subsection 11.1512(c-2), we address these two issues together.

We must decide whether a school board member is required to exhaust his or her administrative remedies before filing a suit for injunctive relief to obtain information from the school district pursuant to subsection 11.1512(c-2) of the Texas Education Code. We have found no authority addressing this issue and the parties do not point us to any authority that is directly on point. Thus, this is an issue of first impression.

*A. Standard of Review*

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 241 (Tex. App.—San Antonio 2012, pet. denied). Because subject matter

jurisdiction presents a question of law, we review the trial court's decision under a de novo standard of review. *Id.*

"In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court." *Tex. Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 457–58 (Tex. App.—Austin 2004, pet. denied). "When a defendant challenges jurisdiction, a court is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (internal quotation marks omitted).

We also review issues of statutory construction de novo. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).

*B. The General Rule: Exhaustion of Administrative Remedies*

"When the [l]egislature creates an administrative agency, it may grant the agency authority to resolve disputes that arise within the agency's regulatory arena." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016). "If the [l]egislature expressly or impliedly grants an agency sole authority to make an initial determination in such disputes, the agency has exclusive jurisdiction, and a party must exhaust its administrative remedies before seeking recourse through judicial review." *Id.* (internal quotation marks omitted). When the outcome of the administrative process leaves the party dissatisfied, the party may file suit and have the courts review the agency's decision. *Id.* However, "[i]f the party files suit before exhausting exclusive administrative remedies, the courts lack jurisdiction and must dismiss the case." *Id.*

*C. Administrative Remedies for School-Law Violations*

To fulfill its duty to support and maintain an efficient system of public free schools, the legislature has established the Texas Education Agency, the office of the Commissioner of Education, the State Board of Education, and local school districts throughout the state. *Id.* at 545.

> Regarding disputes that arise within the education system, the [l]egislature has provided that, with limited statutory exceptions . . . ,
>
>> a person may appeal in writing to the commissioner if the person is aggrieved by:
>>
>>> (1) the school laws of this state; or
>>>
>>> (2) actions or decisions of any school district board of trustees that violate:
>>>
>>>> (A) the school laws of this state; or
>>>>
>>>> (B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

*Id.* (quoting TEX. EDUC. CODE ANN. § 7.057(a)).

"School laws of this state" means the provisions of titles 1 and 2 of the Texas Education Code and the administrative "rules adopted under those titles." TEX. EDUC. CODE ANN. § 7.057(f)(2); *see also Marquez*, 487 S.W.3d at 546. Subsections 11.1512(c)–(c-2) are within title 2 of the Texas Education Code and are therefore considered "school laws of this state." *See* TEX. EDUC. CODE ANN. §§ 11.1512(c)–(c-2), 7.057(f)(2).

Although subsection 7.057(a) provides that a person "may" appeal to the Commissioner, the courts "have interpreted the statute to *require* a person who *chooses* to appeal to first seek relief through the administrative process." *Marquez*, 487 S.W.3d at 545 (emphasis in original); *see also Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 366 (Tex. App.—San Antonio 2004, no pet.) ("Generally, under Texas law, an aggrieved party, whose claim relates to the administration of school laws and involves disputed fact issues, must exhaust his administrative remedies with the Commissioner of Education before turning to the courts for relief."); *Jones v. Clarksville Indep.*

*Sch. Dist.*, 46 S.W.3d 467, 471 (Tex. App.—Texarkana 2001, no pet.) ("Subject to certain exceptions, Texas law requires a party whose claim concerns the administration of school laws and involves disputed fact issues to exhaust the statutorily provided administrative remedies with the [C]ommissioner of [E]ducation before turning to the courts for relief."). "For well over one hundred years, [the Texas Supreme Court has] held that persons complaining about the management of the school system or the administration of school laws must exhaust their administrative remedies before courts can exercise jurisdiction." *Marquez*, 487 S.W.3d at 546 (internal quotation marks omitted).

### D. Subsections 11.1512(c)–(c-2) of the Texas Education Code

Subsection 11.1512(c) of the Texas Education Code provides:

> A member of the board of trustees of the [school] district, when acting in the member's official capacity, has an inherent right of access to information, documents, and records maintained by the district, and the district shall provide the information, documents, and records to the member without requiring the member to submit a public information request . . . . The district shall provide the information, documents, and records to the member without regard to whether the requested items are the subject of or relate to an item listed on an agenda for an upcoming meeting.

TEX. EDUC. CODE ANN. § 11.1512(c). The school district is required to provide the member with the information, documents, and records requested within twenty business days after the school district receives the request. *Id.* § 11.1512(c-1). "If a district does not provide requested information to a member of the board of trustees in the time required under [s]ubsection (c-1), the member may bring suit against the district for appropriate injunctive relief." *Id.* § 11.1512(c-2).

In construing statutes, our primary objective is to give effect to the legislature's intent. *First State Bank of DeQueen*, 325 S.W.3d at 635. "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.* "We presume the

[l]egislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Id.*

*E. Analysis*

We begin by recognizing the general rule that when a person is aggrieved by a violation of the school laws of this state, the person must first exhaust their administrative remedies before he or she can seek relief from the courts. However, the supreme court has plainly stated there are limited statutory exceptions to the exhaustion-of-remedies requirement when certain school laws are violated. *See Marquez*, 487 S.W.3d at 545 ("Regarding disputes that arise within the education system, the [l]egislature has provided that, with limited statutory exceptions not at issue here, a person" must exhaust his or her administrative remedies). Such an exception exists in subsection 11.1512(c-2), which permits a school board member to seek injunctive relief directly from the courts when the school district does not comply with the statutory requirements to provide information maintained by the school district that is requested by the school board member.

Subsection 11.1512(c) of the Texas Education Code states school board members have an inherent right of access to information, documents, and records maintained by the district. TEX. EDUC. CODE ANN. § 11.1512(c). It further provides the school district must provide requested information that is maintained by the school district without regard to whether the requested items are the subject of or relate to an item listed on an agenda for an upcoming school board meeting. *Id.* This is because the school board member is part of the governing body overseeing the school district and must make decisions affecting the school district. *See generally id.* §§ 11.1511, 11.1512. When making these decisions, the school board member should be well informed and able to exercise his or her judgment based on accurate, timely information.

Accordingly, in subsection (c-1), the legislature enacted limitations on how long the school district can take to respond to the request for information. *Id.* § 11.1512(c-1) (providing the school

district shall respond to the request for information no later than the twentieth business day after the date the district receives the request and, even if compliance with the timing requirements would be unduly burdensome, the time to comply shall not exceed the thirtieth business day after the date the district receives the request to respond).

Clearly, the legislature intended school board members to have access to requested information quickly. Looking at the plain language of subsection (c-2), we conclude the legislature provided for quick relief through the courts should the school district fail to comply with its duty to provide the requested information under subsection (c) or the timing requirements of subsection (c-1). *See id.* § 11.1512(c-2).

The plain language of subsection (c-2) states "the [school board] member may bring suit against the [school] district for appropriate injunctive relief" if the school district does not provide the requested information to the school board member. The legislature used specific words in this statute that lead us to conclude it did not intend for school board members to exhaust their administrative remedies before seeking relief in the courts. First, the statute states the school board member "may bring suit against the district[.]" *Id.* When the legislature refers to a dispute being brought before the Commissioner of Education—or the dispute is otherwise subject to the exhaustion of administrative remedies—it has consistently used the word "appeal" rather than the word "suit."[3] We find further support in the supreme court's jurisprudence distinguishing between

---

[3] *Compare* TEX. EDUC. CODE ANN. § 7.057(a)(1) ("[A] person may appeal in writing to the commissioner if the person is aggrieved by . . . the school laws of this state[.]"), *and* TEX. EDUC. CODE ANN. § 7.057(a-1) ("A person is not required to appeal to the commissioner before pursuing a remedy under a law outside [the school laws of this state].''), *and* TEX. EDUC. CODE ANN. § 29.064 ("A parent of a student enrolled in a school district offering bilingual education or special language programs may appeal to the commissioner if the district fails to comply with the requirements established by law . . . ."), *and* TEX. EDUC. CODE ANN. § 21.209 ("A teacher who is aggrieved by a decision of a board of trustees on the nonrenewal of the teacher's term contract may appeal to the commissioner for a review of the decision . . . ."), *and* TEX. GOV'T CODE ANN. § 2001.145 ("A timely motion for rehearing is a prerequisite to an appeal [to a district court] in a contested [administrative] case . . . ."), *with* TEX. EDUC. CODE ANN. § 26.0085(b) ("A court shall grant a suit described by [s]ubsection (a) precedence over other pending matters to ensure prompt resolution of

pursuing administrative remedies through the Commissioner of Education and "filing suit" in court. *See Marquez*, 487 S.W.3d at 544 (emphasis added) ("[I]f the outcome of the administrative process leaves the party dissatisfied, it may *file suit* and have the courts review the agency's decision."). And, even when a party may seek judicial review after the exhaustion of administrative remedies, the legislature still uses the word "appeal" when referring to the action initiating judicial review. *See* TEX. EDUC. CODE ANN. § 7.057(d) ("A person aggrieved by an action of the agency or decision of the commissioner may appeal to a district court in Travis County."); TEX. EDUC. CODE ANN. § 21.307(a) ("Either party may appeal the commissioner's decision to: (1) a district court in the county in which the district's central administrative offices are located; or (2) if agreed by all parties, a district court in Travis County."); TEX. EDUC. CODE ANN. § 39.007 (listing the procedures to be followed when a school district appeals the decision of the Commissioner of Education to a district court).

Next, subsection 11.1512(c-2) states the board member may bring suit against the district "for appropriate injunctive relief." *Id.* § 11.1512(c-2). The Commissioner of Education cannot provide injunctive relief; injunctive relief is not listed among the powers given to the Commissioner of Education by the legislature. *See id.* § 7.055 (listing the Commissioner of Education's powers and duties). Rather, injunctive relief is a power wielded by the courts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.021(a) ("The judge of a district or county court in term or vacation shall hear and determine applications for writs of injunction."); TEX. CIV. PRAC. &

---

the subject matter of the suit."), *and* TEX. EDUC. CODE ANN. § 22.0514 ("A person may not file suit against a professional employee of a school district unless the person has exhausted the remedies provided by the school district for resolving the complaint."), *and* TEX. EDUC. CODE ANN. § 22.0513(c) ("The court shall abate the suit if the court, after a hearing, finds that the person is entitled to an abatement because notice was not provided as required by this section."), *and* TEX. EDUC. CODE ANN. § 26.61 ("A rehabilitation district may sue and be sued in its name. In any suit against a district, process may be served on the president or vice president."), *and* TEX. EDUC. CODE ANN. § 22.06(b) ("On good cause shown, within the discretion of the court where such suit is pending, it shall be lawful to enjoin and restrain such person from acting as trustee during the pendency of the suit.").

REM. CODE ANN. § 65.021(b) (emphasis added) ("This section does not limit injunction jurisdiction granted by law to other *courts*."); s*ee also generally* TEX. R. CIV. P. 680–693a (providing rules regulating a court's issuance of injunctive relief).

Finally, subsection 11.1512(c-2) provides for the recovery of "court costs and reasonable attorney's fees" to a school board member "who prevails in a suit under this subsection . . . ." It is axiomatic that a party must first file suit *in court* for there to be a recovery of "court costs." Courts routinely award court costs and reasonable attorney's fees to the prevailing party in suits before the court when authorized by contract or statute. In contrast, we find no such authority vested in the Commissioner of Education. *See* TEX. EDUC. CODE ANN. § 7.055 (listing the Commissioner of Education's powers and duties).

According to the plain language of the statute, we conclude the legislature created an exception to the general exhaustion-of-remedies rule for school board members who are seeking to compel a school district to comply with its statutory obligations under subsections 11.1512(c) and 11.1512(c-1) of the Texas Education Code. *See First State Bank of Dequeen*, 325 S.W.3d at 635 (stating a reviewing court's primary objective when construing statutes is to give effect to the legislature's intent as expressed by the plain meaning of the text).

Accordingly, we overrule Webb CISD's first and second issues.

### SUMMARY JUDGMENT

In its fourth issue, Webb CISD argues the trial court erred when it denied Webb CISD's motions for summary judgment because the evidence conclusively establishes that Webb CISD provided all requested documents maintained by Webb CISD and there is no evidence that Webb CISD withheld requested documents it maintained.

In this interlocutory appeal, we question whether we have jurisdiction over the trial court's order denying Webb CISD's motions for summary judgment. *See Cullum v. White*, 399 S.W.3d

173, 188 (Tex. App.—San Antonio 2011, pet. denied) ("The general rule is appellate courts do not have jurisdiction to hear the denial of a motion for summary judgment on appeal."); *see also Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (holding the denial of a summary judgment motion is generally not appealable because the order is not a final judgment). However, Webb CISD's motions for summary judgment—which were asserted in the same filing as the plea to the jurisdiction—state the trial court "lacks jurisdiction over [the Marshalls'] claims because the attached evidence conclusively establishes that [the Marshalls'] claims are meritless" and "there is no evidence that [the Marshalls] have not been provided with the information, documents, or records maintained by the school district that they requested." In its prayer, Webb CISD requested the trial court dismiss the Marshalls' claims with prejudice.

Although not a model of clarity, it appears Webb CISD argued in its motions for summary judgment that the trial court did not have jurisdiction over the Marshalls' claims because subsection 11.1512(c-2) only authorizes suit after a failure to provide requested documents and information in violation of subsections 11.1512(c)–(c-1). Because it provided the requested documents and information, Webb CISD argues subsection 11.1512(c-2) does not authorize the Marshalls' suit and the trial court lacks jurisdiction over the Marshalls' claims. To the extent Webb CISD's motions for summary judgment raised jurisdictional arguments, we have jurisdiction to review the order denying the motions. *See PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 301 n.1 (Tex. 2019) ("For purposes of appellate jurisdiction over interlocutory orders, the court of appeals had jurisdiction over the denial of the combined plea to the jurisdiction and motion for summary judgment, regardless of how the trial-court pleading was styled, because the substance of the pleading was to raise sovereign immunity, which implicates subject-matter jurisdiction."); *see also City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (citations omitted) ("A party may appeal an interlocutory order that grants or denies a

plea to the jurisdiction by a governmental unit. This Court considers 'plea to the jurisdiction' not to refer to a 'particular procedural vehicle,' but rather to the substance of the issue raised."); *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) ("The [l]egislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used."); *see also Swanson*, 590 S.W.3d at 551 (holding a jurisdictional challenge may be asserted through a no-evidence motion for summary judgment).

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). "When the motion asserts both no-evidence and traditional grounds, we first review the no-evidence grounds." *Cmty. Health Sys. Prof. Svcs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *see also Covarrubias v. Diamond Shamrock Refining Co., LP.*, 359 S.W.3d 298, 301 (Tex. App.—San Antonio 2012, no pet.) ("If the nonmovant fails to produce more than a scintilla of evidence, there is no need to analyze whether the movant's proof" satisfies the traditional summary judgment burden).

When reviewing a no-evidence motion for summary judgment, "we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences." *Covarrubias*, 359 S.W.3d at 301 (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). "[T]he movant must first assert that no evidence exists as to one or more elements of a claim the nonmovant would have the burden of pro[ving] at trial." *Covarrubias*, 359 S.W.3d at 301. Once the movant has alleged no evidence exists as to one or more elements, the burden then shifts to the nonmovant to present more than a scintilla of evidence which raises a genuine issue of material fact on each of the challenged elements. *Id.* "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Chapman*, 118 S.W.3d at 751).

To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

Relevant to the analysis here, Webb CISD attached to its motions for summary judgment documents it claims to have provided to the Marshalls pursuant to their requests, the declaration of Superintendent Beto D. Gonzalez, and the declaration of Webb CISD's counsel, David Campbell. Superintendent Gonzalez's declaration identifies each of the Marshalls' requests for information and then generally states for each request that: "All information and documents responsive [to the respective request] and maintained by Webb CISD was provided to Plaintiffs prior to [various dates specific to each request,]" all responsive documents that are maintained by Webb CISD were produced, or that Webb CISD does not maintain the records or audio recordings requested. Campbell's declaration likewise states that he has provided the Marshalls with all responsive documents that were requested, and the Marshalls have not responded to Campbell's inquiries on what documents they believe have not been produced.

In their response, the Marshalls identified documents they believe are or should be maintained by Webb CISD but have not been produced in response to their various requests. The Marshalls supported their response with their own affidavits.

In his affidavit, Robert Marshall attests he has been a school board member at Webb CISD for over twenty-five years and has "over 1,000 hours of Certified School Board Training in school operation and law." Robert further avers—based on his experience as a school board member at Webb CISD—he has "personal knowledge of what reports, documents[,] and information Webb CISD keeps and should keep in its regular day-to-day operations as a school district in Texas." In

his affidavit, Robert lists the various requests for information that were made to the school district and, in detail, lists the information that has not been produced in response to the requests. In his affidavit, Robert expressly states he has "not received the documents that Webb CISD claims" to have given him prior to school board meetings held in 2020.

Amy Marshall's affidavit states that she has been a school board member for twelve years and has "about 350 hours of School Board Training[.]" Amy attests she has "been the Finance Committee Chairperson for about 4 years and Curriculum and Instruction Committee Chairperson for about 4 or 5 years." Amy further avers that during her twelve years as a school board member she has "gained personal knowledge of what reports, documents[,] and information Webb CISD keeps and should keep in its regular day-to-day operations as a school district in Texas." Amy states in her affidavit that she and Robert "made numerous requests" for information that were ignored by Webb CISD, or the information provided was incomplete or not relevant.

Under the appropriate standard of review, we must take as true all evidence favorable to the Marshalls and indulge every reasonable inference and resolve any doubt in the Marshalls' favor. *See Hansen*, 525 S.W.3d at 680. With this deference in mind, we hold the Marshalls' affidavits present more than a scintilla of evidence on their claims for injunctive relief and directly dispute the assertions made by Superintendent Gonzalez and Campbell on whether the school district has provided the Marshalls with all documents responsive to the Marshalls' requests and that are maintained by Webb CISD. Accordingly, we conclude the Marshalls' response to Webb CISD's motions for summary judgment presented more than a scintilla of evidence and raised genuine issues of material fact. *See id.*

Accordingly, we overrule Webb CISD's fourth issue.

**CONCLUSION**

We affirm the trial court's order denying Webb CISD's plea to the jurisdiction and motions for summary judgment. Because Robert and Amy Marshall are no longer school board members, and thus no longer entitled to information under subsection 11.1512(c) of the Texas Education Code, our holding bears only on the trial court's determination of the Marshalls' entitlement to court costs and reasonable attorney's fees, if any. *See Best*, 562 S.W.3d at 20.

Irene Rios, Justice