

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

April 23, 2018

The Honorable Joseph C. Pickett
Chair, Committee on Environmental Regulation
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0194

Re: Applicability of amendments to the Transportation Code made by Senate Bill 312, 85th Regular Session, to the Loop 1604 toll project in Bexar County (RQ-0190-KP)

Dear Representative Pickett:

You ask about the applicability of amendments to the Transportation Code by Senate Bill 312, 85th Legislature, to the Loop 1604 toll project ("Project") in Bexar County.[1] Citing three specific provisions that were amended to require repayment of Texas Department of Transportation ("Department") highway funds, you ask us to opine on whether the Project is subject to the repayment requirements. *See* Request Letter at 1.

As amended, Transportation Code subsection 222.103(a) provides that

> [t]he department may participate, by spending money from any available source, in the cost of the acquisition, construction, maintenance, or operation of a toll facility of a public or private entity on terms and conditions established by the [Texas Transportation] commission. The commission shall require the repayment of any money spent.

TEX. TRANSP. CODE § 222.103(a). Similarly, subsection 370.301(c)[2] provides, with respect to the Department's contributions to a turnpike project, that "[a]n obligation or expense incurred by the commission or department under this section is part of the cost of the turnpike project for which the obligation or expense was incurred. The commission or department shall require money contributed by the commission or department under this section to be repaid." *Id.* § 370.301(c).

---

[1] *See* Letter from Honorable Joseph C. Pickett, Chair, House Comm. on Envtl. Regulation, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Oct. 31, 2017), https://texasattorneygeneral.gov/ opinion/requests-for-opinion-rqs ("Request Letter").

[2] You specifically refer us to Transportation Code subsections 222.103(a), 366.301(c), and 372.002. *See* Request Letter at 1. Because the entity pursuing the Project is a regional mobility authority regulated under chapter 370 of the Transportation Code and not a regional tollway authority governed by chapter 366 of the Transportation Code, we consider subsection 370.301(c), which was similarly amended by Senate Bill 312. *See* TEX. TRANSP. CODE § 370.301(c).

Yet, amended subsection 372.002 provides that "[n]otwithstanding any other law, including Sections 222.103(a), . . . and 370.301(c) . . . , a toll project entity is not required to repay . . . funds contributed by the department for a project if a toll project entity commenced the environmental review process for the project on or before January 1, 2014." *Id.* § 372.002(d); *see Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010) ("[W]e construe statutes by first looking to the statutory language for the Legislature's intent, and only if we cannot discern legislative intent in the language of the statute itself do we resort to canons of construction or other aids such as which statute is more specific."). Your question requires a determination whether the Project is one in which the environmental review process commenced prior to January 1, 2014.

The State's environmental review process for a transportation project is found in subchapter I-1, of chapter 201 of the Transportation Code. *See* TEX. TRANSP. CODE §§ 201.751–.762. Subchapter I-1 requires the Texas Transportation Commission ("Commission") to "establish standards for processing an environmental review document for a highway project." *See id.* § 201.752(a); *see also id.* § 201.604 (requiring the Commission to provide for the environmental review of transportation projects that are not subject to review under the National Environmental Policy Act ("NEPA")). Accordingly, the Commission adopted rules providing for the environmental review process in title 43, chapter C of the Texas Administrative Code.[3] *See* 43 TEX. ADMIN. CODE § 2.1; *see also id.* §§ 2.1–.308 (Tex. Dep't of Transp., Envtl. Review of Transp. Projects).

The exception to repayment in Transportation Code subsection 372.002(d) applies only if the environmental review process "commenced" prior to January 1, 2014. TEX. TRANSP. CODE § 372.002(d). Commence means to "begin, start" or "to initiate formally by performing the first act." *State v. Sanchez*, 135 S.W.3d 698, 699 (Tex. App.—Dallas 2003), *aff'd*, 138 S.W.3d 324 (Tex. Crim. App. 2004) (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 456 (1981)). Thus, an environmental review process "commences" upon the performance of a first act of the actions identified in title 43, chapter C of the Texas Administrative Code.

In your request letter, you tell us that the recent grant to the Alamo Regional Mobility Authority ("Authority") includes "funds for the environmental review and development costs." Request Letter at 1 (citing Transportation Commission Minute Order #115051[4]). The Minute Order states only that the funds are provided, in part, for "environmental review work." Minute Order #115051, at 1. It does not explain whether this refers to a new environmental review process or to the work of the environmental review process already begun. The Alamo Regional Mobility Authority informs us that the environmental review process for the Project began in 2009 with the

---

[3]Similarly, the Federal Highway Administration adopted rules to implement NEPA, found at 42 U.S.C. §§ 4321–4370m-12. *See* 23 C.F.R. § 771.101 (stating that the purpose of the regulation to "prescribe[] the policies and procedures of the Federal Highway Administration . . . for implementing [NEPA] . . . [,] supplement[] the NEPA regulation of the Council on Environmental Quality [and] set forth all . . . requirements under NEPA for the processing of highway and public transportation projects"); *see also* 40 C.F.R. § 1500.3 (rules implementing NEPA adopted by the Council on Environmental Quality).

[4]Tex. Transp. Comm'n Meeting Minute Order #115051 (Sept. 28, 2017), *available at* https://publicdocs.txdot.gov/minord/MinuteOrderDocLib/115051.pdf.

hiring of an environmental services consultant to prepare an environmental impact statement.[5] It also informs us that the Federal Highway Administration subsequently classified the Project as an environmental assessment in 2013 and that the agreement with the environmental services consultant was then modified to require an environmental assessment. *See* Authority Brief at 3. The Authority asserts that both environmental review actions occurred prior to the January 1, 2014 deadline in subsection 372.002(d) such that the exclusion applies to the Project and no repayment of funds is required. *Id.* at 3–5.

We consider the environmental review process. Transportation Code subsection 372.002(d) does not specifically define "environmental review process," but title 43, chapter C of the Texas Administrative Code, promulgated under Transportation Code, subchapter I-1 of chapter 201, provides for three levels of environmental review: a categorical exclusion, an environmental assessment, and an environmental impact statement. *See* 43 TEX. ADMIN. CODE §§ 2.81 (categorical exclusion), 2.83 (environmental assessments), 2.84 (environmental impact statements). Likewise, the federal set of rules governing an environmental review process under NEPA provides for the same three levels of review.[6] 23 C.F.R. §§ 771.115 (classes of action which prescribe the level of documentation), 771.117 (categorical exclusions), 771.119 (environmental assessments), 771.123–.125 (environmental impact statements). A categorical exclusion "is a category of actions that have been found to have no significant effect on the environment, individually or cumulatively." 43 TEX. ADMIN. CODE § 2.81; *see also* 23 C.F.R. §§ 771.115(b), .117(a) (categorical exclusions are actions which "do not involve significant environmental impacts"), 771.117(c)(7) (listing landscaping as a type of categorical exclusion activity). An environmental assessment applies to a project that is not classified as a categorical exclusion and that does not clearly require the preparation of an environmental impact statement. *See* 43 TEX. ADMIN. CODE § 2.83; 23 C.F.R. §§ 771.115(c), .119. An environmental impact statement is required if the action is likely to cause significant impacts on the environment. *See* 43 TEX. ADMIN. CODE § 2.84; 23 C.F.R. §§ 771.115(a), .123(a).

Over the course of its duration, any given project may include more than one level of review. For instance, an environmental assessment is sometimes required to determine whether the action will have a significant impact and thus necessitate the preparation of an environmental impact statement. *See City of Dallas v. Hall*, 562 F.3d 712, 717 (5th Cir. 2009) (defining an environmental assessment as a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a

---

[5]Brief from C. Brian Cassidy, Locke, Lord, LLP, for Alamo Regional Mobility Authority at 3–4 (Dec. 1, 2017) (on file with the Op. Comm.) (hereinafter "Authority Brief").

[6]Under the Surface Transportation Project Delivery Program created by SAFETEA-LU and continued under MAP-21, federal transportation law authorizes delegating the NEPA review and approval processes to state Departments of Transportation. *See* Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, Pub. L. No. 109-59, 119 Stat. 1144 (2005); Moving Ahead for Progress in the 21st Century Act, Pub. L. No. 112-141, 126 Stat. 405 (2012). The Federal Highway Administration has delegated to the State of Texas the U.S. Department of Transportation Secretary's responsibilities for environmental review, consultation, or other actions required under any Federal environmental law with respect to highway, public transportation, railroad, and multimodal projects within the State. *See* Memorandum of Understanding Between the Federal Highway Administration and the Texas Department of Transportation Concerning State of Texas' Participation in the Project Delivery Program Pursuant to 23 U.S.C. 327 (on file with the Op. Comm.).

finding of no significant impact" (quotation marks omitted)); 40 C.F.R. 1508.9(a)(1). In the event the environmental assessment yields a finding of no significant impact, an environmental impact statement is not required. *See Sierra Club v. Espy*, 38 F.3d 792, 796 (5th Cir. 1994).

A court could conclude that the hiring of an environmental services consultant to perform an environmental assessment or an environmental impact statement is among the first acts of the environmental review process. However, as we have no guidance from the Legislature or from the Department's rules regarding what constitutes the commencement of a project, we cannot determine when this Project commenced. Your question ultimately involves disputed issues of fact and thus is one that this office cannot determine as a matter of law. *See* Tex. Att'y Gen. Op. No. KP-0091 (2016) at 2 ("[f]act finding is beyond the scope of an attorney general opinion"). We can advise you, however, that the change in the Project's level of environmental review from an environmental impact statement to an environmental assessment is likely not the "commencement" of a new environmental review process for purposes of subsection 372.002(d). *See generally* 23 C.F.R. § 771.105(a) (requiring that to the extent possible the "environmental investigations, reviews, and consultations be coordinated in a single process").

You also suggest that a new termini (or project limits) is a change in the scope of the Project for which NEPA requires a new environmental impact statement or environmental assessment. *See* Request Letter at 2. NEPA is triggered upon a "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Thus, to the extent the change in termination point, considered by itself, qualifies as a "major Federal action[] significantly affecting the quality of the human environment," it would trigger NEPA and a new environmental impact statement. *See id.* Whether such a change in an existing project qualifies as such an action is a fact question that is outside the purview of an attorney general opinion. *See* Tex. Att'y Gen. Op. No. KP-0091 (2016) at 2.

# S U M M A R Y

Transportation Code, subsection 372.002(d), as amended by Senate Bill 312, provides that an entity constructing a toll project is not required to repay funds provided by the Department of Transportation "if a toll project entity commenced the environmental review process for the project on or before January 1, 2014." A change in a project's level of environmental review from an environmental impact statement to an environmental assessment is likely not the "commencement" of a new environmental review process for purposes of subsection 372.002(d). However, the question whether the environmental review process for the Loop 1604 toll project in Bexar County commenced prior to January 1, 2014, involves disputed issues of fact and thus is one that this office cannot determine as a matter of law.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee