

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00419-CV

James Ernest **WALLACE** Sr.,
Appellant

v.

Letitia Ann **WALLACE**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-10056
Honorable Angelica Jimenez, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: February 28, 2024

AFFIRMED

Appellant James Ernest Wallace, Sr. appeals the trial court's order granting in part and denying in part his petition to modify spousal maintenance. The trial court reduced James's spousal maintenance obligation to appellee Letitia Ann Wallace from $1,150 per month to $379.73 per month.[1] In his first issue, James argues the trial court's order violates section 8.055 of the Texas Family Code because $379.73 exceeds twenty percent of James's average monthly gross income. *See* TEX. FAM. CODE ANN. § 8.055. In his second issue, James argues the trial court erred

---

[1] For clarity, we refer to James and Letitia by their first names.

when it did not retroactively apply the modification to payments accruing after the filing of the motion to modify but before the trial court rendered its order. In his third issue, James argues that had the trial court retroactively applied the modification, he would be entitled to reimbursement for overpayment of spousal maintenance. James contends—because the trial court erred in not retroactively applying the modification—it also erred when it denied his request for reimbursement of spousal maintenance overpayment. We affirm.

## BACKGROUND

James and Letitia entered into an Agreed Final Decree of Divorce that was signed by the trial court on April 19, 2011. The parties do not dispute that Letitia is unable to earn sufficient income to provide for her minimum reasonable needs because she suffers from an incapacitating physical or mental disability.[2] Pursuant to the divorce decree, James was ordered to provide spousal maintenance to Letitia in the amount of $1,150 per month until Letitia's disability is removed, she dies, she remarries, or the trial court renders an order affecting the spousal maintenance obligation.[3] James was employed at that time and earning approximately $80,000 a year.

James retired in June 2015 and testified his annual income dropped thereafter. On November 6, 2015, James filed a petition to modify spousal maintenance.[4] The trial court heard James's motion to modify spousal maintenance on May 24, 2016, but the order granting modification was not signed until July 26, 2019. On August 5, 2019, James filed a motion

---

[2] The family code provides the court-ordered spousal maintenance may continue for as long as Letitia is unable to earn sufficient income to provide for her minimum reasonable needs because of an incapacitating physical or mental disability. *See* TEX. FAM. CODE ANN. §§ 8.054(b); 8.051(2)(A).

[3] The trial court also ordered James to pay quarterly premiums for Letitia's health care coverage.

[4] The clerk's record begins with documents filed on November 24, 2020. We rely on the trial court's findings of fact and conclusions of law as well as the testimony in the reporter's record for information regarding documents filed before November 24, 2020. James testified at the modification hearing, and asserts in his brief, that the motion to modify was filed on November 6, 2015.

requesting the trial court reconsider its ruling. The trial court granted the motion and vacated the July 26, 2019 order modifying spousal maintenance.

James's live pleading requested, among other things, the trial court modify spousal maintenance to align with his change in income. James also requested the trial court retroactively apply the modification to November 2015, and determine whether he is entitled to reimbursement for overpayment of spousal maintenance.

On March 9-11, 2022, the trial court held a second hearing on James's modification motion. At this hearing, James argued retroactive application of the modification will result in overpayment of spousal maintenance and requested the trial court order Letitia to reimburse him for these overpayments. On April 14, 2022, the trial court granted a downward modification ordering James to pay $379.73 per month in spousal maintenance. The trial court declined to retroactively apply the modification to November 2015, when the original modification motion was filed, and ordered the first modified payment due on April 1, 2022. The trial court confirmed arrears in favor of Letitia and denied James's request for reimbursement of alleged overpayments. James appeals.

### STANDARD OF REVIEW

A trial court's order modifying spousal maintenance is reviewed under an abuse of discretion standard. *Marquez v. Marquez*, No. 04-04-00771-CV, 2006 WL 1152235, at \*1 (Tex. App.—San Antonio May 3, 2006, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. *Id.* Although challenges to the legal and factual sufficiency of the evidence are not independent grounds for asserting error, they are relevant factors in assessing whether the trial court abused its discretion. *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied). "Ultimately, we determine whether, based on the elicited evidence, the trial court made a

reasonable decision." *Clark v. Clark*, No. 04-22-00112-CV, 2023 WL 7137288, at *2 (Tex. App.—San Antonio Oct. 31, 2023, no pet.) (mem. op.) (internal quotation marks omitted). The trial court does not abuse its discretion if there is some probative and substantive evidence to support its decision. *Diaz*, 350 S.W.3d at 254.

"In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony." *Bolda v. Bolda*, No. 02-18-00307-CV, 2019 WL 6334706, at *7 (Tex. App.—Fort Worth Nov. 27, 2019, no pet.) (mem. op.) (quoting *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.)).

### AMOUNT OF MAINTENANCE

In his first issue, James argues the trial court abused its discretion when it ordered a modification of spousal maintenance in the amount of $379.73. James contends this amount exceeds twenty percent of his average monthly gross income in violation of section 8.055 of the Texas Family Code.

Under chapter 8 of the Texas Family Code, "the amount of spousal maintenance is discretionary within certain statutory limits." Clark, 2023 WL 7137288, at *3. Relevant here, one such limit prohibits a court from ordering spousal maintenance that exceeds the lesser of either $5,000 or twenty percent of the obligor's average monthly gross income. TEX. FAM. CODE ANN. § 8.055(a). For purposes of this calculation, gross income includes:

(A)  100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses);

(B)  interest, dividends, and royalty income;

(C)  self-employment income;

(D)  net rental income (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation); and

(E)   all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, unemployment benefits, interest income from notes regardless of the source, gifts and prizes, maintenance, and alimony[.]

*Id.* § 8.055(a-1)(1).

Gross income, however, does not include:

(A)   return of principal or capital;

(B)   accounts receivable;

(C)   benefits paid in accordance with federal public assistance programs;

(D)   benefits paid in accordance with the Temporary Assistance for Needy Families program;

(E)   payments for foster care of a child;

(F)   Department of Veterans Affairs service-connected disability compensation;

(G)   supplemental security income (SSI), social security benefits, and disability benefits; or

(H)   workers' compensation benefits.

*Id.* § 8.055(a-1)(2).

On appeal, James argues the only evidence regarding his gross monthly income was his testimony that he earned approximately $1,062.73 per month between January 1, 2022 and March 1, 2022, and the trial court was therefore without discretion to order spousal maintenance in any amount exceeding $212.55. We disagree. While James did testify that he has only earned $3,188.19 from January 1, 2022 to March 1, 2022, he also testified to the following earnings in previous years:

| Year | Gross Annual Income Under Chapter 8 of the Family Code | 20% of Gross Monthly Income |
|---|---|---|
| 2016 | $22,030 | $367.15 |
| 2017 | $32,027 | $533.00 |
| 2018 | $26,600 | $---------[5] |
| 2019 | $27,000 | $448.00 |
| 2020 | $20,967 | $449.00[6] |
| 2021 | $27,400 | $460.00 |

James further testified that his monthly military retirement check increased in 2022. According to James, his gross monthly income from his military retirement is now $2,550. James stated $1,250 of the military retirement goes to another former spouse, leaving him with $1,300 in military retirement income. James also earns an additional monthly gross income of $846 from his postal service retirement. Between these two sources, the trial court could have reasonably concluded that James's gross monthly retirement income is at least $2,146. Based on this testimony alone, the trial court could have assessed spousal maintenance at $429.20 per month without exceeding section 8.055's twenty percent limit.[7] Moreover, James testified he has earned additional income in recent years through gambling, though the amount of his winnings varied from year to year.

Here, the trial court was entitled to disregard James's earlier self-serving and contradictory testimony that he only earned $3,188.19 in the first three months of 2022. *See Bolda*, 2019 WL 6334706, at *7 (holding the trial court was free to disbelieve a party's self-serving testimony regarding the party's monthly income). The trial court was presented with probative and substantive evidence that James earns at least $2,146 in monthly gross income from sources that may be considered under section 8.055(a-1) of the Texas Family Code. The trial court ordered

---

[5] James did not testify what amount would have been twenty percent of his gross monthly income in 2018.
[6] Although James testified twenty percent of his gross monthly income in 2020 was $449.00, a chart of these figures admitted into evidence shows twenty percent of James's gross monthly income in 2020 was $349.45.
[7] Twenty percent of $2,146 is $429.20.

James to pay Letitia $379.73 per month in spousal maintenance, an amount that was less than eighteen percent of $2,146.[8]  Because there was probative and substantive evidence that $379.73 was less than twenty percent of James's average gross monthly income, we hold the trial court did not abuse its discretion when it ordered James to pay $379.73 in spousal maintenance.

James's first issue is overruled.

### RETROACTIVE APPLICATION OF MODIFICATION

In his second issue, James argues the trial court erred when it did not retroactively apply the modification of spousal maintenance to November 2015, when James allegedly filed his original motion to modify spousal maintenance.  According to James, subsection 8.057(c)(1) of the Texas Family Code requires the trial court to retroactively apply the modification to all payments accruing after the filing of the motion to modify.  Letitia argues the decision to retroactively apply the modification is discretionary, but subsection 8.057(c)(1) prohibits the trial court from retroactively applying the modification to payments that accrued prior to the date the motion to modify was filed.

Whether the trial court erred when it declined to retroactively apply the modification turns on the meaning of the statutory language in subsection 8.057(c)(1) of the Texas Family Code.  We find no caselaw interpreting subsection 8.057(c)(1); thus, the parties' competing interpretations of the statute appear to create an issue of first impression.

"We review issues of statutory construction de novo." *In re A.R.G.*, 645 S.W.3d 789, 795 (Tex. App.—San Antonio 2022, no pet.) (citing *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)).  "In construing statutes, our primary objective is to give effect to the legislature's intent." *A.R.G.*, 645 S.W.3d at 795 (alterations omitted).  "We rely

---

[8] $379.73 is approximately 17.7% of $2,146.

on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.* We presume the legislature chose its words carefully intending all words in a statute to have meaning and for none of them to be useless. *In re C.J.N.-S.*, 540 S.W.3d 589, 591 (Tex. 2018).

> Subsection 8.057(c) of the Texas Family Code provides:
>
> After a hearing, the court may modify an original or modified order or portion of a decree providing for maintenance or a maintenance qualified domestic relations order under Subchapter H on a proper showing of a material and substantial change in circumstances that occurred after the date of the order or decree, including circumstances reflected in the factors specified in [s]ection 8.052, relating to either party or to a child of the marriage described by [s]ection 8.051(2)(C). The court:
>
> (1) shall apply the modification only to payment accruing after the filing of the motion to modify; and
>
> (2) may not increase maintenance to an amount or duration that exceeds the amount or remaining duration of the original maintenance order.

TEX. FAM. CODE ANN. § 8.057(c).

We "consider statutes as a whole rather than their isolated provisions." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Here, subsections 8.057(c)(1) and (c)(2) are limitations on the trial court's authority to modify spousal maintenance, not mandates on the trial court's application of spousal maintenance modification. For example, subsection 8.057(c)(2) does not allow the trial court to increase the amount or duration of spousal maintenance to an amount that is greater or a duration that is longer than those in the original maintenance order. Likewise, subsection 8.057(c)(1) prohibits the trial court from retroactively applying modification to payments accruing before the motion to modify was filed.

James argues the word "shall" in subsection 8.057(c)(1) mandates the trial court apply the modification to every payment accruing after the motion to modify is filed. However, James's interpretation would render the word "only" superfluous. *See Pedernal Energy, LLC v. Bruington*

*Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017) ("We construe statutes so that no part is surplusage, but so that each word has meaning."); *In re Centerpoint Energy, Hous. Elec., LLC*, 629 S.W.3d 149, 158–59 (Tex. 2021, orig. proceeding) ("[W]e presume the [l]egislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen."); *C.J.N.-S.*, 540 S.W.3d at 591 ("[C]ourts presume the [l]egislature intended for all the words in a statute to have meaning and for none of them to be useless."). We "take statutes as we find them and refrain from rewriting text chosen by the [l]egislature." *Pedernal Energy*, 536 S.W.3d at 492.

If it were the legislature's intent to require the trial court to retroactively apply modification to every payment accruing after the motion was filed, it would have said so by removing the word "only" and simply stating: "The court shall apply the modification to payment accruing after the filing of the motion to modify." Instead, the legislature chose to include the words "shall" and "only" to prohibit modification to any payments accruing *before* the filing of the motion to modify rather than a mandate to retroactively apply modification to all payments accruing after the filing of the modification motion. *See id.* ("We must interpret the statute in a way that gives meaning to all its words."). The trial court may, on the other hand, apply the modification to any payments accruing after the motion to modify is filed. This logically includes any date after the motion is filed, but before the modification order is rendered, as well as any date after the modification order is rendered. We see no indication in the statute that the legislature intended to deprive the trial court of discretion on what date it may apply the modification—whether retroactive or not—so long as the modification is applied after the filing of the motion to modify.

Because subsection 8.057(c)(1) of the Texas Family Code does not require the trial court to apply modification to all payments accruing after the date the motion to modify is filed, we hold

the trial court did not abuse its discretion when it applied the modification to all payments accruing on and after April 1, 2022. Accordingly, James's second issue is overruled.

## OVERPAYMENT

The trial court confirmed James's arrears in the amount of $28,933.85, constituting "all unpaid spousal support and any balance owed on previously confirmed arrearages or retroactive support judgments as of March 15, 2022." In his third issue, James contends if the trial court was required to retroactively apply modification to November 2015, then he would not owe arrears and would instead be entitled to reimbursement of payments in excess of the modified amount that were paid since November 2015. According to James, retroactive application of the modification would entitle him to $32,909.23 in overpayments paid between December 1, 2015 and March 1, 2022.

Because we have already concluded the trial court did not abuse its discretion when it declined to retroactively apply the modification, we hold the trial court did not abuse its discretion when it confirmed arrears for underpayment or non-payment of spousal maintenance accruing at the unmodified amount since November 2015. Accordingly, James's third issue is overruled.

## CONCLUSION

We affirm the trial court's modification order.

Irene Rios, Justice