**GALVESTON INDEPENDENT SCHOOL DISTRICT,** Appellant

v.

**Brent JACO, Appellee.**

No. 14–08–00271–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 11, 2011.

Rehearing Overruled Jan. 28, 2011.

Clay T. Grover, Paul Andrew Lamp, Houston, TX, for Appellant.

Syd Phillips, Houston, TX, for Appellee.

Panel consists of Chief Justice HEDGES and Justices BROWN and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

Brent Jaco sued Galveston Independent District, alleging that he was constructively discharged from his position as the District's Director of Athletics because he reported to the University Interscholastic League ("UIL") that a Ball High School student played on the school's football team when in violation of the UIL's parent-residency rule. According to Jaco, the District's action violated the Whistleblower Act, under which a governmental employer waives immunity from claims that it took adverse employment action against an employee for reporting illegal conduct. Because we agree with the District that the UIL's rules are not "law" as that term is defined in the Whistleblower Act, we reverse and render judgment dismissing

Jaco's case without addressing the District's remaining issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In his first semester as the District's Director of Athletics and Extracurricular Activities, appellant Brent Jaco learned that a student on the Ball High School football team was in violation of a UIL rule regarding parent residency. Jaco discussed the matter with the UIL and with school officials, and with the District's approval, he submitted a written report of the violation to the UIL on November 9, 2005. As a result of the violation, the UIL ruled that Ball High School forfeited the games in which the ineligible player participated, and the school was disqualified from competing for the state championship. A few weeks after Jaco's report, the District superintendent reassigned him to the position of athletic trainer. Jaco instituted grievance proceedings before the District school board, which reinstated him as Director of Extracurricular Activities but did not restore him to his former position as Director of Athletics.

Jaco sued the District in April 2006 and alleged that when the school board refused to reinstate him, he was constructively discharged in violation of the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. §§ 551.001–010 (West 2004 & Supp. 2009). The District moved for summary judgment, which the trial court denied. The District appealed the ruling, but because the summary-judgment motion did not challenge the trial court's subject-matter jurisdiction, we dismissed the appeal for lack of interlocutory appellate jurisdiction. *Galveston Indep. Sch. Dist. v. Jaco,* No. 14–07–00313–CV, 2007 WL 5473075 (Tex. App.-Houston [14th Dist.] Nov. 15, 2007,

no pet.) (mem. op.) (*"Jaco I"*). The District then filed a plea to the jurisdiction in which it asserted that (a) the District's actions do not constitute an adverse employment act, (b) the UIL rule is not a law, and (c) the UIL is not an "an appropriate law enforcement authority" as that term is used in section 554.002(a) of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 554.002. The trial court denied the plea, and Jaco brought this interlocutory appeal. We concluded that the elements of a claim under the Whistleblower Act are not jurisdictional, and thus, "a public employee successfully invokes the subject-matter jurisdiction of the trial court by alleging a violation and seeking relief allowed by the Whistleblower Act." *Galveston Indep. Sch. Dist. v. Jaco,* 278 S.W.3d 477, 481 (Tex.App.-Houston [14th Dist.] 2009) (*"Jaco II"*). While the District's petition for review of our decision was pending, the Texas Supreme Court decided *State v. Lueck,* in which it held that the elements of such a claim are jurisdictional. 290 S.W.3d 876, 883 (Tex.2009). The court accordingly reversed and remanded this case for us "to determine whether, under the analysis set forth in *Lueck,* Jaco has alleged a violation under the Whistleblower Act." *Galveston Indep. Sch. Dist. v. Jaco,* 303 S.W.3d 699, 700 (Tex.2010) (per curiam) (*"Jaco III"*).

## II. ANALYSIS

Under the Act, "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authori-

---

1. We summarize the factual background in accordance with the standard of review by reading Jaco's pleadings liberally and consid-

ering his intent. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004).

ty." TEX. GOV'T CODE ANN. § 554.002(a). In this way, the legislature balanced the public's interest in encouraging governmental employees to report illegal activity against the public employer's right to discipline employees who make intentionally false or objectively unreasonable reports. *See Wichita County, Tex. v. Hart,* 917 S.W.2d 779, 784 (Tex.1996). The District contends the trial court erred in denying its plea to the jurisdiction because Jaco did not allege that he reported a violation of law by the District or by another public employee to an appropriate law enforcement authority. We agree that the UIL's rules are not laws, and because this issue is dispositive, we do not reach the District's remaining issues.

As defined in the Whistleblower Act, a "law" is a state or federal statute, a local ordinance, or "a rule adopted under a statute or ordinance." TEX. GOV'T CODE ANN. § 554.001(1). Jaco does not contend that a UIL rule is a state or federal statute or a local ordinance; rather, the parties dispute whether the UIL parent-residency rule is a "rule adopted under a statute or ordinance." *See id.* § 554.001(1)(C). The legislature has enacted some statutes under which the UIL unambiguously is required to "adopt" particular rules. *See, e.g.,* TEX. EDUC.CODE § 33.091(b) (West 2006 & Supp. 2009) (requiring the UIL to "adopt rules" prohibiting a student from participating in league competitions unless the student agrees not to use steroids); *id.* § 33.091(d) ("The league shall adopt rules for the annual administration of a steroid testing program...."). But the parties have not cited, and we have not found, any statute in which the legislature required the UIL to adopt a parent-residency rule. Thus, on the face of his pleadings, Jaco has not alleged facts constituting a waiver of the District's immunity.

It is Jaco's position, however, that *all* of the UIL's rules are laws because "a rule adopted pursuant to statute" should be understood to mean "a rule sanctioned by a legislative governmental body." According to Jaco,

> The legislature intended that the UIL operates pursuant to rules; that it, as a legislative body has authority to govern the rule drafting process and adoption of those rules, and that it has delegated authority to the Interscholastic League Advisory Council to advise the governor, the legislature, the UIL and the Board of Education as to the content of the rules, with final adoption authority delegated to the Commissioner of Education.

(footnote omitted). For several reasons, we do not find this argument persuasive.

■ First, we are bound to construe a statutory term to mean what the legislature defined it to mean. *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628 (Tex.2010) The legislature chose to define the term "law" in pertinent part as a "rule adopted under a statute or ordinance," and the definition suggested by Jaco is far broader than that supplied by the legislature.

■ Moreover, the UIL's rules are not "adopted" by a legislative body or even by the commissioner of education. Rather, the UIL is required to submit its rules and procedures to the commissioner of education "for approval or disapproval." TEX. EDUC.CODE ANN. § 33.083(b); *id.* § 7.055(b)(41) ("The commissioner [of education] shall adopt rules relating to extracurricular activities under Section 33.081 and approve or disapprove University Interscholastic League rules and procedures under Section 33.083.").[2] Although the

---

2. Section 33.081 includes the "no-pass, no-

play" provision, under which a student who is

words *approve* and *adopt* can be used synonymously in some circumstances,[3] " 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.' " *Sosa v. Alvarez–Machain,* 542 U.S. 692, 712 n. 9, 124 S.Ct. 2739, 2754 n. 9, 159 L.Ed.2d 718 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th rev. ed. 2000)); *DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex.1995). In section 7.055(b)(41) of the Education Code, the legislature distinguished between rules "adopted under a statute"—specifically, section 33.081—and rules that are only "approved." Where, as here, the two different terms are used not only in the same context but in the same sentence, we do not agree that the legislature intended them to have identical meanings.

Equally importantly, Jaco's position cannot be reconciled with the Texas Supreme Court's decision in *State v. Lueck.* In *Lueck,* a governmental employee reported to a superior in his agency that if a contract was not honored, then the Texas Department of Transportation would never be able to comply with a particular federal regulation.[4] *Id.* at 879. The court held that the report did not concern a violation of law and was not made to an appropriate law enforcement authority, but more importantly to this case, the court stated that "[s]uch a regulatory non-compliance of this kind does not equate to a violation of law under which a law enforcement authority regulates or enforces within the meaning of the Whistleblower Act." *Id.* at 885

(citing Tex. Gov't.Code § 554.002(b)). Although a federal regulation would seem to fall within Jaco's definition of "law," the Texas Supreme Court did not consider the federal regulation at issue in *Lueck* to be a "law" for the purposes of the Whistleblower Act. Applying the analysis in *Lueck* to Jaco's allegations as we have been directed to do, we must conclude that the UIL's rules are not "laws" under the Act.

Finally, treating all of the UIL's rules as "law" would produce absurd results. For example, if a public school employee who scheduled a UIL track-and-field competition placed the shot-put competition as the boys' first field event and the pole-vault competition as the girls' first field event—rather than vice versa as required by current UIL rules—the employee would have committed an illegal act.[5] We cannot agree that the legislature intended the phrase "violation of law" to be read so expansively. We therefore sustain the District's fourth issue.

## III. Conclusion

We conclude that the trial court erred in construing the alleged violation of one of the UIL's rules as an allegation of a "violation of law" for the purposes of the Whistleblower Act, and we reverse the trial court's denial of the District's plea to the jurisdiction without addressing the District's remaining issues. Because Jaco's pleadings cannot be cured by amendment, no purpose can be served by remanding the case. *Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 840 (Tex.2007).

failing an academic class is suspended from participation in extracurricular activities.

**3.** *See* Roget's II: The New Thesaurus 18, 47 (Houghton Mifflin Co. ed., 3d ed. 1995).

**4.** *See* 23 C.F.R. § 500.203.

**5.** *Compare University Interscholastic League Constitution and Contest Rules* § 1320(e)(1)(B)(i) (2010–2011) (in girls' field events, the shot put is the first event and the pole vault is the sixth event) with § 1320(e)(1)(C)(i) (in boys' field events, the pole vault is the first event and the shot put is the third event).

We accordingly dismiss Jaco's case with prejudice.