# Supreme Court of Texas

## No. 23-0555

Public Utility Commission of Texas,

*Petitioner*,

v.

RWE Renewables Americas, LLC and TX Hereford Wind, LLC,

*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued March 19, 2024**

JUSTICE LEHRMANN delivered the opinion of the Court.

In response to Winter Storm Uri, the Legislature amended the Public Utility Regulatory Act (PURA) to provide that protocols adopted by the Electric Reliability Council of Texas, or ERCOT, do not take effect before they are approved by the Public Utility Commission. ERCOT then adopted, and the PUC approved, a revision to its protocols effectively setting the price of electricity at the regulatory maximum under Energy Emergency Alert Level 3 conditions—the highest level of emergency that can be declared—even if the standard price-setting

formula yields a different price. Pursuant to PURA's mechanism for seeking judicial review of the validity of "competition rules adopted by the commission [PUC]," TEX. UTIL. CODE § 39.001(e), two market participants initiated a challenge to the PUC's approval order directly in the Third Court of Appeals. That court held the order was both substantively invalid—because the PUC exceeded its statutory authority by setting the price of electricity—and procedurally invalid— because the PUC failed to comply with the Administrative Procedure Act's rulemaking procedures in issuing the order.

We first consider whether, in light of the amendments to PURA requiring PUC approval of ERCOT protocols, the approval order constitutes a "competition rule[] adopted by the commission." *Id.* If it does not, the court of appeals lacked jurisdiction over the proceeding for judicial review of the order. If it does, we must then evaluate whether the court of appeals correctly determined that the order is both procedurally and substantively invalid.

We hold that the PUC's approval order is not a "competition rule[] adopted by the commission" subject to the judicial-review process for PUC rules. PURA envisions a separate process for ERCOT-adopted protocols, and the statutory requirement that the PUC approve those adopted protocols does not transform PUC *approval orders* into PUC *rules* eligible for direct review by a court of appeals. The Third Court of Appeals therefore lacked jurisdiction over this proceeding. Accordingly,

2

we vacate the court of appeals' judgment and dismiss the case for lack of jurisdiction.[1]

## I

### A

PURA Section 39.151 requires the PUC to "certify an independent organization"—here, ERCOT—"to perform the functions prescribed by [that] section." *Id.* § 39.151(c).[2]  Four such functions are listed, including "ensur[ing] the reliability and adequacy of the regional electric network" and "ensur[ing] that electricity production and delivery are accurately accounted for among the generators and wholesale buyers and sellers in the region." *Id.* § 39.151(a)(2), (4).[3]  PUC regulations likewise demand that the "protocols and other rules" adopted by ERCOT "promote economic efficiency in the production and consumption of electricity; support wholesale and retail competition; support the

---

[1] In our contemporaneously issued opinion in *Public Utility Commission v. Luminant Energy Co.*, we hold that the PUC did not exceed its authority in issuing two emergency orders during Winter Storm Uri that operated to a similar end by temporarily setting the price of electricity at the regulatory ceiling. ___ S.W.3d ___, ___ (Tex. June 14, 2024) (No. 22-0231).

[2] A more detailed explanation of the Texas electricity market appears in this Court's opinion in *Luminant*. *See id.* at ___. We also recently engaged in a thorough discussion of ERCOT's history, and its role in the Texas electricity market, in *CPS Energy v. ERCOT*, 671 S.W.3d 605, 611–12 (Tex. 2023).

[3] The others are "ensur[ing] access to the transmission and distribution systems for all buyers and sellers of electricity on nondiscriminatory terms" and "ensur[ing] that information relating to a customer's choice of retail electric provider is conveyed in a timely manner to the persons who need that information." TEX. UTIL. CODE § 39.151(a)(1), (3).

reliability of electric service; and reflect the physical realities of the ERCOT electric system." 16 TEX. ADMIN. CODE § 25.501(a).

ERCOT "is directly responsible and accountable to the commission," which "has complete authority to oversee and investigate [ERCOT's] finances, budget, and operations as necessary to ensure [ERCOT]'s accountability and to ensure that [ERCOT] adequately performs [its] functions and duties." TEX. UTIL. CODE § 39.151(d). If ERCOT "does not adequately perform [its] functions or duties or does not comply with this section," the PUC may take "appropriate action," including decertification. *Id.*

ERCOT possesses rulemaking authority delegated to it by the PUC, as authorized by PURA. *See id.* § 39.151(d), (g-6); 16 TEX. ADMIN. CODE § 25.362(c). The "Nodal Protocols" developed and implemented by ERCOT "provide the framework for the administration of the Texas electricity market." *Pub. Util. Comm'n v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 594–95 (Tex. App.—Austin 2011, pet. denied). Even before recent PURA amendments, ERCOT's protocols were "subject to commission oversight and review." *See* Act of May 30, 2005, 79th Leg., R.S., ch. 797, § 9, 2005 Tex. Gen. Laws 2728, 2729–30 (codified at TEX. UTIL. CODE § 39.151(d)) (amended 2021, 2023) (current version at TEX. UTIL. CODE § 39.151(g-6)).

ERCOT is uniquely positioned to manage the electricity market by virtue of its technical expertise, and ERCOT utilizes a variety of resources and systems to manage grid conditions. For example, ERCOT typically relies on a computer system that employs a mathematical formula to send price-based signals to energy generators regarding

4

whether additional power is needed. *Luminant,* ___ S.W.3d at ___. The PUC has specifically delegated to ERCOT the task of developing protocols for how that mathematical formula calculates energy pricing in times of energy shortage, or "scarcity pricing." *Id.*; 16 TEX. ADMIN. CODE § 25.509(b).

## B

In February 2021, Winter Storm Uri incapacitated the Texas electric grid and resulted in an Energy Emergency Alert Level 3 "load-shed" event, meaning ERCOT directed operators of the transmission system to reduce electricity consumption by involuntarily disconnecting customers from the grid. During the load-shed event, ERCOT and the PUC took various additional steps to balance supply and demand in the market to avoid total grid collapse. One such step was to supersede the standard price-setting system by administratively setting the wholesale price of electricity at the regulatory ceiling. In the storm's aftermath, ERCOT's Nodal Protocols were amended to codify the practice in case future load-shed events necessitated a similar response. That amendment is the subject of this suit.

## C

As noted, even before Uri, ERCOT's protocols were subject to commission oversight and review. After the storm, the Legislature amended PURA to additionally provide that "[r]ules adopted by an independent organization [i.e., ERCOT] . . . may not take effect before receiving commission approval." Act of May 30, 2021, 87th Leg., R.S., ch. 425, § 3, 2021 Tex. Gen. Laws 830, 830 (codified at TEX. UTIL. CODE

5

§ 39.151(d)) (amended 2023) (current version at TEX. UTIL. CODE § 39.151(g-6)).[4]  In accordance with that provision, ERCOT's board of directors adopted Nodal Protocol Revision Request (NPRR) 1081, which would amend Nodal Protocol 6.5.7.3.1, and presented it to the PUC for approval.  The revision would set the price of electricity at the regulatory ceiling during an emergency load-shed event to reflect scarcity of supply, regardless of whether the standard price-setting formula yields a different price.  ERCOT reported to the PUC that the revision would "ensure that Real-Time energy prices reflect the VOLL [Value of Lost Load] when Load is being shed, which is fundamental to an energy-only market design in order to provide effective economic signals."  The proposal was accompanied by a report from ERCOT's board and an

---

[4] As further amended in 2023, Section 39.151(g-6) currently provides:

In this subsection, a reference to a protocol includes a rule. Protocols adopted by an independent organization and enforcement actions taken by the organization under delegated authority from the commission are subject to commission oversight and review and may not take effect before receiving commission approval.  To maintain certification as an independent organization under this section, the organization's governing body must establish and implement a formal process for adopting new protocols or revisions to existing protocols.  The process must require that new or revised protocols may not take effect until the commission approves a market impact statement describing the new or revised protocols.  The commission may approve, reject, or remand with suggested modifications to the independent organization's governing body protocols adopted by the organization.

Act of May 26, 2023, 88th Leg., R.S., ch. 464, § 4, 2023 Tex. Sess. Law Serv. (West) 1133 (codified at TEX. UTIL. CODE § 39.151(g-6)).

6

impact-analysis report. The PUC ultimately issued an order approving NPRR 1081.

It is undisputed that load shedding is not driven by market forces but is instead an important regulatory tool designed to protect the grid from long-term damage during an emergency. Load shedding accomplishes this by limiting the amount of demand that may enter the market so as not to exceed available supply. Of course, when that happens, demand *in* the market no longer accurately reflects demand *to enter* the market, and additional supply can only be "accurately" priced by considering the value of replacing that lost load. *See* Hearing of Sen. Comm. Bus. & Com., 87th Leg., R.S. (Feb. 25, 2021), 79–80 (discussing incentives for production at the cap). As supply decreases, the value of lost load increases until it is effectively at the regulatory cap. *Luminant*, ___ S.W.3d at ___.

**D**

On July 30, 2021, respondents RWE Renewables Americas, LLC and TX Hereford Wind, LLC (collectively, RWE) sought judicial review of the PUC's order by the Third Court of Appeals. RWE asserted that the court of appeals had jurisdiction under PURA Section 39.001(e) and alleged that the PUC both exceeded its statutory authority under PURA and failed to comply with the Administrative Procedure Act in issuing the order. The PUC responded that the order was not a PUC rule subject to direct review by the court of appeals or the APA's rulemaking requirements, and that the PUC properly issued the order in furtherance of its statutory authority to oversee ERCOT and ensure the reliability of the Texas electric grid.

7

The court of appeals held that the PUC's order constituted a "competition rule adopted by the commission" under Section 39.001(e), giving the court jurisdiction over the proceedings. 669 S.W.3d 566, 575 (Tex. App.—Austin 2023). The court of appeals then held that the PUC's order was invalid because (1) the PUC lacked the authority to approve NPRR 1081 under PURA and (2) the PUC had failed to substantially comply with the APA's rulemaking procedures. *Id.* at 576–77.[5] We granted the PUC's petition for review.

## II

We necessarily begin by considering jurisdiction. The PUC challenges the court of appeals' subject matter jurisdiction over what is essentially a direct appeal of the PUC's order.

## A

PURA specifically provides for judicial review of "competition rules adopted by the commission." TEX. UTIL. CODE § 39.001(e) ("Judicial review of competition rules adopted by the commission shall be conducted under [the APA], except as otherwise provided by this chapter."). Unlike most suits for judicial review of an agency rule, review of a PUC competition rule begins in the court of appeals. *Id.*; *see also id.* § 39.001(f) ("A person who challenges the validity of a

---

[5] In support of its first holding, the court relied on its own decision in *Luminant*, which we also review today. 669 S.W.3d at 576.

8

competition rule must file a notice of appeal with the court of appeals . . . .").[6]

The PUC argues that its order approving NPRR 1081 is not a rule at all, much less a "competition rule," and that PURA thus does not authorize direct review of the order by the court of appeals. The APA defines "rule" as "a state agency statement of general applicability" that "implements, interprets, or prescribes law or policy" or "describes the procedure or practice requirements of a state agency." TEX. GOV'T CODE § 2001.003(6)(A)(i)–(ii). The definition "includes the amendment or repeal of a prior rule" but "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." *Id.* § 2001.003(6)(B)–(C).

**B**

PURA empowers the PUC to "adopt and enforce rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants." TEX. UTIL. CODE § 39.151(d). However, as noted, it also allows the PUC to "delegate these responsibilities to an independent organization," which the PUC has done by delegating rulemaking authority to ERCOT. *Id.*; *CPS Energy*, 671 S.W.3d at 616; *see* 16 TEX. ADMIN. CODE § 25.362(c) (requiring ERCOT to "adopt and comply with procedures [subject to certain parameters] concerning the

---

[6] When RWE instituted this proceeding, Section 39.001(e) provided for review in the Third Court of Appeals. In 2023, the Legislature amended Section 39.001(e) to provide for review by the Fifteenth Court of Appeals going forward. Act of May 22, 2023, 88th Leg., R.S., ch. 459, § 1.13, 2023 Tex. Sess. Law Serv. (West) 1119.

adoption and revision of ERCOT rules"). ERCOT has utilized this delegated rulemaking authority to establish operational rules known as the Nodal Protocols. Under those protocols, generators make offers in advance on how much electricity they are willing to sell and at what price. ERCOT, NODAL PROTOCOLS § 4.4.9 (May 1, 2024).[7] ERCOT uses those prices to match demand to the lowest-price provider. *Id.* § 4.5. ERCOT serves as "the central counterparty for all transactions" that it settles and "is deemed to be the sole buyer to each seller" (typically, an energy generator) "and the sole seller to each buyer" (typically, a retail user) "of all energy." *Id.* § 1.2(4). Operating as a sort of clearinghouse, it is ERCOT that generates settlement statements providing the terms under which market participants must make payments for energy transactions. *Id.* §§ 9.2.4(1), 9.5.4(1), 9.5.5.

In accordance with the PUC's direction, ERCOT has implemented detailed procedures for adopting and revising its protocols. "A request to make additions, edits, deletions, revisions, or clarifications to these Protocols . . . is called a Nodal Protocol Revision Request (NPRR)." *Id.* § 21.1(1) (June 1, 2023). A variety of entities may use the NPRR process, including market participants, the PUC, the independent market monitor, and ERCOT itself. *Id.* § 21.2(1)(a), (c), (f), (g). NPRRs are posted on ERCOT's website and reviewed by ERCOT's Protocol Revision Subcommittee. *Id.* §§ 21.4.1(4), 21.3(1). Market participants and other

---

[7] We cite the current version of the protocols unless substantive differences require citing the version in effect when the relevant events occurred. ERCOT's current protocols and a library of past versions of the protocols, with summaries of revisions, are available on ERCOT's website. Protocols - Nodal, https://www.ercot.com/mktrules/nprotocols.

entities may comment on an NPRR. *Id.* § 21.4.4(1). In fact, RWE participated in this process with respect to NPRR 1081 by submitting comments in opposition to it.[8]

After considering the NPRR, the revision subcommittee may take one of several actions, including recommending approval of the revision or rejecting it. *Id.* § 21.4.4(3). ERCOT then posts a report describing the subcommittee's action. *Id.* § 21.4.4(5). Again, market participants and others may comment on the subcommittee report. *Id.* § 21.4.5(1). If the subcommittee recommends approval, ERCOT prepares an impact analysis, *id.* § 21.4.6(1), which is reviewed by the subcommittee, *id.* § 21.4.7(1). The NPRR then moves to the Technical Advisory Committee, which considers the subcommittee report and the impact analysis. *Id.* § 21.4.8(1). If the advisory committee recommends approval of an NPRR, the committee forwards its report to the ERCOT board of directors, *id.* § 21.4.8(5), and the report is also posted online, *id.* § 21.4.8(4). ERCOT's board then has the opportunity to approve the NPRR or take other action.

Before PURA was amended to require PUC approval for protocol revisions to become effective, ERCOT would implement them on the first day of the month following approval by ERCOT's board. *Id.* § 21.6(1) (Jan. 1, 2021). Now that protocols "may not take effect before receiving commission approval," TEX. UTIL. CODE § 39.151(g-6), they are implemented on the first day of the month following receipt of that

---

[8] RWE, Comment Letter on Nodal Protocol Request 1081 (June 23, 2021), https://www.ercot.com/mktrules/issues/NPRR1081#keydocs.

approval, ERCOT, NODAL PROTOCOLS §§ 21.4.11(1), 21.6(1) (June 1, 2023).

A market participant, among others, may appeal a decision of the ERCOT board regarding an NPRR to the PUC. *Id.* § 21.4.12.3(1). The PUC's rules outline the procedure for review of ERCOT protocols. 16 TEX. ADMIN. CODE §§ 22.251, 25.362(c)(5). Those rules generally require that a complainant exhaust the process outlined in Section 21 of the protocols before challenging the protocol with the PUC. *Id.* § 22.251(c). Exceptions exist when, for example, "the complainant seeks emergency relief necessary to resolve health or safety issues." *Id.* § 22.251(c)(1)(C). Generally, the complaint must be filed within thirty-five days of "the ERCOT conduct complained of." *Id.* § 22.251(d); ERCOT, NODAL PROTOCOLS § 21.4.12.3(1) (June 1, 2023). In response to the complaint, the PUC may, among other things, provide ERCOT with "guidance on the development and implementation of protocol revisions" and order ERCOT "to promptly develop protocol[] revisions for commission approval." 16 TEX. ADMIN. CODE § 22.251(o)(3), (4). If the complainant is dissatisfied with the result of the PUC proceedings, it can then seek judicial review. TEX. UTIL. CODE § 15.001.

This painstaking procedure serves to leverage the expertise of ERCOT members and industry stakeholders while maintaining transparency and affording interested parties plentiful opportunities to weigh in. Moreover, we recognize that ERCOT and the PUC are uniquely situated as legislatively endorsed joint participants in a complex regulatory scheme—each serving its own distinct and essential purpose. As we recognized in *CPS Energy*, "ERCOT do[es] not fall neatly

12

into any camp. It is a unique entity serving a role that is not clearly analogous to a public entity like a police department or a public school. Yet, it provides an essential governmental service." 671 S.W.3d at 623 (alteration in original) (citation and internal quotation marks omitted). While the PUC has broad administrative responsibilities, it simultaneously lacks "the expertise and staff resources" to make informed regulatory decisions independent of ERCOT. SUNSET ADVISORY COMM., STAFF REPORT WITH COMMISSION DECISIONS: PUBLIC UTILITY COMMISSION OF TEXAS, ELECTRIC RELIABILITY COUNCIL OF TEXAS, OFFICE OF PUBLIC UTILITY COUNSEL 37 (Jan. 2023).[9]

## C

A substantially similar version of the above-described process for adopting and revising ERCOT protocols has long been in effect. *See* ERCOT, NODAL PROTOCOLS § 21 (Mar. 1, 2005) (rev. Feb. 2010, Apr. 2011, May 2011, Oct. 2011, May 2012, Aug. 2012, Apr. 2013, Dec. 2013, May 2014, July 2016, Nov. 2016, Nov. 2017, Jan. 2021, Apr. 2023, June 2023). The legislative and regulatory schemes have in turn envisioned separate, complementary purposes of and procedures for PUC rules and ERCOT protocols, notwithstanding the fact that ERCOT and its protocols have consistently been subject to PUC oversight and review. TEX. UTIL. CODE § 39.151(d). RWE nevertheless suggests that, by amending PURA to require formal PUC approval of ERCOT-adopted protocols at the tail end of the process, the Legislature intended to

---

[9] Available at https://www.ercot.com/files/docs/2023/01/20/PUC-ERCOT-OPUC-Staff-Report-with-Commission-Decisions_1-19-23.pdf).

13

overhaul that process entirely and effectively convert ERCOT protocols into PUC rules subject to the same review procedures. We do not discern such a sweeping intent from the language the Legislature chose.

For one thing, PURA makes clear that ERCOT, not the PUC, is the entity "adopting" new or revised ERCOT protocols. *See id.* § 39.151(g-6). The PUC then "approves" the protocols. *See id.* This distinction is deceptively significant because the APA's requirements, which RWE insists must be satisfied, are exclusively and repeatedly directed at rules "adopted" by a "state agency." *See, e.g.*, TEX. GOV'T CODE § 2001.033(a) ("A state agency order finally adopting a rule must include: . . . ."). Indeed, the Legislature deliberately uses the term "adopt" throughout the APA—no reference is made to an agency's "approval" of a rule. *See, e.g.*, *id.* § 2001.004(1) (requiring a state agency to "adopt rules of practice stating the nature and requirements of all available formal and informal procedures").[10] By contrast, the APA uses the term "approve" to describe the *governor's* action on legislation that allows it to become the law. *Id.* § 2001.006(a)(2).

PURA reinforces this distinction. For example, in a suit for judicial review of a competition rule under Section 39.001, the

---

[10] *See also* TEX. GOV'T CODE § 2001.006 (describing when a rule "adopted" under Section 2001.006(b) may take effect); *id.* § 2001.021(a) ("An interested person by petition to a state agency may request the adoption of a rule."); *id.* § 2001.023(a) ("A state agency shall give at least 30 days' notice of its intention to adopt a rule before it adopts the rule."); *id.* § 2001.030 ("On adoption of a rule, a state agency, if requested to do so by an interested person either before adoption or not later than the 30th day after the date of adoption, shall issue a concise statement of the principal reasons for and against its adoption.").

rulemaking record includes "the order *adopting* the rule." TEX. UTIL. CODE § 39.001(e)(4) (emphasis added). The PUC issues no such order with respect to ERCOT protocols. We cannot ignore the Legislature's deliberate decision not to designate the PUC as the entity that "adopts" ERCOT protocols given the comprehensive statutory use of that term.

RWE and the court of appeals highlight that, under PURA as amended, an ERCOT protocol does not take effect until it receives PUC approval. 669 S.W.3d at 574; TEX. UTIL. CODE § 39.151(g-6). True, but even in requiring PUC approval, the Legislature distinguished between ERCOT's role in adopting a protocol and the PUC's role in approving it. TEX. UTIL. CODE § 39.151(g-6) ("*Protocols adopted by [ERCOT]* . . . may not take effect before receiving commission *approval*." (emphasis added)). Again, the Legislature deliberately employed these terms to communicate two distinct administrative actions that have distinct legal consequences. *See Galveston Indep. Sch. Dist. v. Jaco*, 331 S.W.3d 182, 185–86 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (highlighting the Legislature's distinct use of "adopt" and "approve" in statutes describing the duties of the commissioner of education); TEX. EDUC. CODE § 7.055(b)(41) ("The commissioner shall *adopt* rules relating to extracurricular activities under Section 33.081 and *approve or disapprove* University Interscholastic League rules and procedures under Section 33.083." (emphases added)).

Finally, we cannot ignore that when the Legislature amended PURA in 2021 to require PUC approval of the independent organization's (ERCOT's) protocols, it simultaneously added the requirement that the organization "establish and implement a formal

15

process for adopting new protocols or revisions to existing protocols." Act of May 30, 2021, 87th Leg., R.S., ch. 425, § 3, 2021 Tex. Gen. Laws 830, 832 (amended 2023) (codified at TEX. UTIL. CODE § 39.151(g-6)). As discussed above, ERCOT already had such a process in place; nevertheless, the requirement signals legislative recognition that ERCOT rulemaking and PUC rulemaking are independent endeavors.

In sum, consistent with the well-established regulatory scheme and the legislation governing it, we hold that the PUC's order approving NPRR 1081 was a ratification decision that simply allowed protocol revisions, already developed and adopted by ERCOT in accordance with its own detailed procedures, to take effect. Consequently, the PUC's order was not an agency-adopted "rule" under the Administrative Procedure Act. In turn, because the court of appeals' jurisdiction under Utilities Code Section 39.001(e) is limited to review of "competition rules adopted by the commission," the court lacked jurisdiction over RWE's challenge to the PUC's approval order.[11]

### III

Having concluded that the court of appeals lacked jurisdiction over RWE's appeal of the PUC's approval order, we need not address RWE's remaining arguments. We note, however, that this Court contemporaneously holds in *Luminant* that the PUC did not exceed its

---

[11] As noted, PUC regulations provide a process for review of ERCOT protocols, 16 TEX. ADMIN. CODE §§ 22.251, 25.362(c)(5), which culminates in a suit for judicial review in district court, TEX. UTIL. CODE § 15.001. RWE did not engage in that process, choosing instead to utilize the inapplicable procedure for reviewing PUC competition rules.

16

authority under PURA in issuing temporary emergency orders that, like NPRR 1081, set the price of electricity at the regulatory ceiling during a period of emergency load-shed. ___ S.W.3d at ___.

**\* \* \* \***

Because the PUC's order was not a "competition rule adopted by the commission" under PURA, Section 39.151 did not confer direct-review jurisdiction on the court of appeals. We therefore vacate the court of appeals' judgment and dismiss the suit for lack of jurisdiction.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 14, 2024

17